CLINTON WALWORTH, PLAINTIFF IN ERROR, *v.* JAMES KNEELAND AND HANNAH HIS WIFE, AND FRANCES CORNELIA FOSTER AND WILLIAM FOSTER, INFANTS, BY THÉIR NEXT FRIEND, JAMES KNEELAND.

Where a case was decided in a State court against a party, who was ordered to convey certain land, and he brought the case up to this court upon the ground that the contract for the conveyance of the land was contrary to the laws of the United States, this is not enough to give jurisdiction to this court under the 25th section of the judiciary act.

The State court decided against him upon the ground that the opposite party was innocent of all design to contravene the laws of the United States.

But even if the State court had enforced a contract, which was fraudulent and void, the losing party has no right which he can enforce in this court, which cannot therefore take jurisdiction over the case.

THIS case was brought up from the Supreme Court of the State of Wisconsin, by a writ of error issued under the 25th section of the judiciary act.

The case is stated in the opinion of the court.

It was submitted, on a printed brief by Mr. Smith, on behalf of the plaintiff in error, and argued by Mr. Baxter, for the defendants in error.

The counsel for the plaintiff in error made the following points.

1st. The contract in which this suit originated was made in violation of the act of Congress, approved March 3d, 1807, entitled "An act to prevent settlements being made on lands ceded to the United States, until authorized by law. 2 U. S. Stat. 445.

The first section prohibits the occupation and cultivation of the public lands, under the penalty of forfeiture of all the right and claim of the occupant.

The fourth section provides for the removal of such occupants and their punishment by fine and imprisonment.

At the time all the contracts connected with the land in question, to which Walworth was a party, were made, there was no preëmption law of the United States in force. Every occupant of the public lands was a trespasser and occupied in violation of the act of 3d of March, 1807, unless he had permission pursuant to the provisions of the second section of that act.

2d. The bond of Walworth to Arnold, and the contract in which it originated, were made in violation of the 4th section of the act of Congress, of the 31st of March, 1830. U. S. Stat. vol. 8, p. 278.

3d. These agreements respecting this land between Frisbee and Walworth, Frisbee and Arnold, and Walworth and Arnold, all originated in, and were part of, a combination to hinder and prevent, at first any other person than Frisbee, and after his sale, any other than Walworth from purchasing the land at the public sales of the United States. There was a double combination. Walworth, Arnold, and Frisbee, combined together, and they also combined with and became a part of the general organization of the settlers upon the public lands in the Milwaukie land district, to prevent any one, excepting the actual claimant under the rules of such organization, from purchasing such lands at the public sales.

4th. Frisbee testifies that whether the title was obtained by preëmption or under the claim laws, the title to the land, according to the original contract, was to come to him; that is, he was to purchase direct from the United States, and convey one half to Walworth; and he (Walworth) for that one half was to furnish money to pay for the whole, in addition to the $100 he paid Frisbee at the time of making the original contract. In other words, he was to give something more than the price for which the land should be purchased of the United States.

This contract was clearly within both the spirit and the letter of the act of 31st March, 1830, which declares all such contracts absolutely void.

5th. The contract between Walworth and Arnold, if ever valid, was annulled or rendered impossible to be performed by the act of Congress, passed 18th day of June, 1838, entitled "An act to grant a quantity of land to the Territory of Wisconsin for the purpose of aiding to open a canal to connect the waters of Lake Michigan with those of Rock River.

The counsel for the defendant in error moved to dismiss the

case for want of jurisdiction, and on that motion and on the argument of the case, relied on the following points:

I. Foster, the plaintiff in the court below, purchased from Arnold the land in question, and took the assignment of the title bond executed by Walworth, without any knowledge of, or participation in, the illegality (if any existed) between Frisbee and Walworth. He expended his money in the purchase and improvement of the land, without any design to violate or encourage the violation of law.

He therefore contends that Walworth cannot set up the defence of illegality against him.

1. Because they are not in *pari delicto.*

2. Because he was able to establish his case as stated in his bill, and claim specific performance of the contract, without relying on the illegal contract alleged by Walworth to exist between Frisbee and Walworth.

On this point the defendant in error will rely on the following cases: Faikney *v.* Reynous, 4 Burr. 2070; S. C. 1 W. Blackstone's Rep. 633; Petrie *v.* Hannay, 3 T. R. 418; Simpson *v.* Bloss, 7 Taunt. 246; Fivaz *v.* Nicholls, 2 M. G. & S. 501.–52; Eng. Com. Law Rep. 501; Bunn *v.* Winthrop, 1 Johns. C. R. 337; Ellis *v.* Nimm, Lloyd & Goold, 333; 10 Cond. Eng. C. Rep. 533; Lewis *v.* Davison, 4 Mees. & Wels. 654.

II. This court has not jurisdiction, because the decision of the Supreme Court of Wisconsin does not question the validity of any of the statutes referred to in the assignment of errors, nor has the plaintiff in error set up any right, title, privilege, or exemption under said statutes or any of them.

III. The Supreme Court of Wisconsin has not misconstrued the acts of Congress named in the assignment of errors.

On these points the defendant in error will refer to the acts of Congress and authorities mentioned below.

The Judiciary Act, 1 Stat. at Large, 85, L. & B.'s edition. An act to prevent Settlements, etc. 2 Id. 445. An act for the relief, etc. 4 Id. 391–2. An act to grant, etc., 5 Stat. at Large, 245. An act regulating grants, etc., south of Tennessee, 2 Id. pp. 229–30, §§ 2, 3, 1803. An act supplementary, etc. 2 Id. c. 43, § 5, 1805. An act to authorize the State of Tennessee, etc., 1806, c. 31, § 2, condition and 2d proviso, 2 Id. 383. An act regulating grants of land in Michigan, 1807, c. 34, § 2, p. 438, vol. 2. An act supplemental, etc., 1808, c. 10, § 1, p. 455, vol. 2. 1808, c. 40, § 6, p. 480, an act concerning sales. 1808, c. 67, § 3, p. 503, an act supplemental, etc. Act of 1811, c. 46, § 4, 1st proviso, vol. 2, p. 664, preference given to occupants. 1813, c. 20, § 1, p. 797, preference, in sales in Illinois territory, given to settlers. 1814, c. 61, § 4, p. 126, vol. 3, pre-

emption to settlers in Illinois prior to February 5, 1813.  1815, c. 63, § 3, p. 218, vol. 3.  1816, c. 101, § 1, p. 307, vol. 3.  1816, c. 163, §§ 1, 2, and pp. 330, 331.  1820, c. 86, p. 573.  1826, c. 28, vol. 4, p. 154, preëmptions to settlers in Alabama, Mississippi, and Florida.  1830, c. 208, vol. 4, p. 420.  1834, c. 54, vol. 4, p. 678.  1838, c. 119, vol. 5, p. 251.  Piatt v. Oliver and others, 2 McLean, 278; Oliver v. Piatt, 3 How. 410, 411.

Mr. Chief Justice TANEY delivered the opinion of the court.

This case is brought before us by a writ of error directed to the Supreme Court of the State of Wisconsin.

A bill in equity was filed in the Milwaukie District Court of that State by Gustavus A. Foster, against Walworth, the plaintiff in error, to obtain the specific performance of a contract for the conveyance of a certain quarter section of land described in the bill.  The contract under which the complainant claims is set out in the bill; and, as he alleges, was made by Walworth with a certain Jonathan E. Arnold; that the land in question had at that time been surveyed by the government, but not offered for sale; and that Arnold, in pursuance of and in execution of the agreement with Walworth, entered upon and took possession of it, and afterwards assigned his interest to the complainant, who took possession, and still held the possession when his bill was filed; that Walworth had become the purchaser, pursuant to his agreement with Arnold, and obtained a legal title from the United States; and was bound, under that agreement and the assignment of Arnold above mentioned, to convey the land to the complainant.

Foster died pending the suit, and the defendants in error are his legal representatives.

Walworth, in his answer, alleges that the original contract in relation to this land, was between him and a man by the name of Frisbee; that Frisbee transferred his interest to Arnold, who agreed to take his place, and fulfil his part of the agreement; and that the contract with Arnold was made upon that condition.  He admits that Arnold conveyed his interest to Foster. He also gives in much detail the several contracts; the understanding of the respective parties at the time, as he alleges it to have been; their acts afterwards; the object of the agreement; and the circumstances under which he afterwards became the purchaser of the land claimed.  And he denies that there was any valuable consideration moving from Frisbee or Arnold to him to support the contract; and if there was, he denies the construction given by the complainant to the agreement; and denies, also, that his subsequent purchase from the government was made under it.  He alleges that neither Frisbee nor Arnold

performed their part of the contract; and, moreover, that the contract was void, because its object and purpose was to prevent competition for public lands, when offered at auction by the government, and therefore against the policy of the law.

Testimony was taken on both sides; and, at the final hearing, the court, by its decree directed Walworth to convey to the defendants in error the one half of the quarter section in question. Walworth appealed to the Supreme Court of the State, where the decree was affirmed. And this writ of error is brought to revise that decree.

Upon looking into the proceedings in the State court, we should be at a loss to understand how this court could be supposed to have jurisdiction upon this writ of error, over any of the questions decided in the State court, if the printed argument in behalf of the plaintiffs in error had not pointed to the one on which he relies. For we do not see that Walworth set up any right or title under an act of Congress; or that any of the contingencies took place at the trial which give jurisdiction to this court under the twenty-fifth section of the act of 1789.

But it appears that he claims the right to remove the case to this court upon the following ground: He alleges in his answer that, at the time of his contract with Frisbee, and also with Arnold, there was no act of Congress which authorized them to settle on this land, or gave any right of preëmption to those who had settled on them; that they were trespassers, and had illegally combined with a large body of men of like character, who had settled upon the public lands in that district, to prevent them from selling for more than one dollar and twenty-five cents the acre, and to secure to each other at that price the land they had respectively selected. And he further states, that these settlers had adopted rules and established a land office in which their respective claims were to be entered; and had agreed that, if the government refused to grant the right of preëmption at the price above named, and directed them to be sold at public auction, the settlers would, by force and terror — or, as he terms it, "by club or Lynch law" — prevent any one from bidding against the settler for the land he had entered at their land office; and would, by such means, enable him to buy it at the lowest government price, that is, at one dollar and twenty-five cents an acre. And that, under the agreement between Frisbee and himself, Frisbee was to hold possession, and have his claim entered at the settlers' land office; and, if Congress should give the right of preëmption at the lowest government price, he and Frisbee or Arnold were to share in the profits, Walworth to furnish the money to pay for it. And, if no right of preëmption was given, Walworth was to be permitted to buy, under the

settlers' regulations, at that price, and the profits in that case also to be shared between the parties. And that these contracts were in violation of the acts of Congress, in relation to the sales of public lands, and contrary to public policy, and, therefore, void. Such is the substance of his defence on this part of the case, so far as we can gather it from his answer, (which is by no means · clear in its statements,) and from the evidence he offered to support it, and the printed argument filed in his behalf.

It is due to the State court to say that, in its decree, it declares that such a contract would be void; and it decreed in favor of the complainants upon the ground that it was not proved, by legal testimony, that either Frisbee or Arnold had undertaken to associate themselves with the illegal combination of settlers, or to use any other unlawful means, to enable Walworth to buy the land in question at a reduced price.

But if it had been otherwise, and the State court had committed so gross an error as to say that a contract, forbidden by an act of Congress, or against its policy, was not fraudulent and void, and that it might be enforced in a court of justice, it would not follow that this writ of error could be maintained. In order to bring himself within the twenty-fifth section of the act of 1789, he must show that he claimed some right, some interest, which the law recognizes and protects, and which was denied to him in the State court. But this act of Congress certainly gives him no right to protection from the consequences of a contract made in violation of law. Such a contract, it is true, would not be enforced against him in a court of justice; not on account of his own rights or merits, but from the want of merits and good conscience in the party asking the aid of the court. But to support this writ of error, he must claim a right which, if well founded, he would be able to assert in a court of justice, upon its own merits, and by its own strength. No such right is claimed in the answer of the plaintiff in error. And indeed it would be a novelty in legislation and in public policy if Congress had taken so much pains to provide for the protection of persons who had combined with others to perpetrate a fraud on the United States, and found themselves in the end the sufferers by the speculation; or who, by the error of a State court, had been compelled to share its gains with their associates in the fraud. The right or interest claimed in the State court must be of a very different character, to entitle him to the protection of the act of 1789. It has already been so decided in this court in the case of Udell and others v. Davidson, 7 How. 769.

Neither can the writ of error be supported on the ground that

Walworth was unable to purchase, at one dollar and twenty-five cents per acre, another portion of the land mentioned in the contracts, in consequence of its subsequent cession by the United States to the territory of Wisconsin. Whether that cession, and the enhanced price at which it was held, absolved him from the obligation of performing any part of the contract, depended altogether upon its construction. The rights of the parties did not depend on the act of Congress making the cession, but upon the contract into which they had entered. And the construction of that agreement, and the rights and obligations of the parties under it, were questions exclusively for the State court; and over its decree in this respect this court has no control.

The writ of error must be dismissed for want of jurisdiction.

## *Order.*

This cause came on to be heard on the transcript of the record from the Supreme Court of the State of Wisconsin, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged, by this court, that this cause be, and the same is hereby, dismissed for the want of jurisdiction.