## ALLEN v. ARGUIMBAU.

ERROR TO THE SUPREME COURT OF THE STATE OF FLORIDA.

No. 523. Submitted April 3, 1905.—Decided May 1, 1905.

Where the judgment of the state court rests on two grounds, one involving a Federal question and the other not, and it does not appear on which of the two the judgment was based and the ground, independent of a Federal question, is sufficient in itself to sustain it, this court will not take jurisdiction.

The certificate of the Chief Justice of the Supreme Court of the State on the allowance of the writ of error that the judgment denied a title, right or immunity specially set up under the statutes of the United States, cannot in itself confer jurisdiction on this court.

Plaintiff in error contended as defendant in the state court, which overruled the plea, that his notes were void because given in pursuance of a contract which involved the violation of §§ 3390, 3393, 3397, Rev. Stat., providing for the collection of revenue on manufactured tobacco. *Held,* that as an individual can derive no personal right under those sections to enforce repudiation of his notes, even though they might be illegal and void as against public policy, the defense did not amount to the setting up by, and decision against, the maker of the notes of a right, privilege or immunity under a statute of the United States, within the meaning of § 709, Rev. Stat., and the writ of error was dismissed.

THIS was an action upon two promissory notes for twenty-five hundred dollars each, payable to Horace R. Kelly, endorsed to the Horace R. Kelly & Company, Limited, and by that company endorsed to the firm of which Arguimbau was survivor.

Many pleas were interposed in defense, and, among them, several filed March 24, 1900, and several filed February 2, 1903. By the first of these pleas, defendant below, plaintiff in error here, averred "that on or about the eighteenth day

of March, A. D. 1893, Horace R. Kelly, claiming to be a manufacturer of cigars, agreed with John Jay Philbrick, during his lifetime, that if he, the said John Jay Philbrick, together with George W. Allen and Charles B. Pendleton, would give to him their four joint and several promissory notes for two thousand five hundred dollars each, two of the said notes payable in one year from the date thereof and two payable in two years from the date thereof, he, the said Horace R. Kelly, would have cigars manufactured in Key West, Florida, and in no ot er place, according to the terms of his contract with the Havana & Key West Cigar Company, Limited; that the said coi tract referred to was a contract between the said Horace R. Kelly and one Max T. Rosen, the president of the Havana & Key West Cigar Company, Limited, and in said contract the said Horace R. Kelly bound himself to have the said Horace R. Kelly Company, Limited, a corporation then existing, judicially dissolved and after said dissolution, together with himself and others, to organize a company under the laws of the State of West Virginia, to be known as the Horace R. Kelly Company; that the said Horace R. Kelly Company, when so formed, was to enter into an agreement with the Havana & Key West Cigar Company, Limited, whereby it, in its factory at Key West, Florida, was to manufacture cigars and to fill all orders for cigars secured by the said Horace R. Kelly Company, provided such orders should be approved by the president or manager of the Havana & Key West Cigar Company, Limited. And it was then and there understood and agreed by and between the said Horace R. Kelly and the said Max T. Rosen, the president of the Havana & Key West Cigar Company, Limited, that the cigars so manufactured as aforesaid by the Havana & Key West Cigar Company, Limited, at its factory at Key West, Florida, to fill the order for cigars secured by the said Horace R. Kelly Company were to be removed from said factory or place where said cigars were made without being packed in boxes on which should be stamped, indented, burned or impressed into each box; in a

legible and durable manner, the number of cigars contained therein and the number of the manufactory in which the said cigars had been manufactured. That at the time of the making of said contract and understanding and agreement between the said Horace R. Kelly and the said Max T. Rosen, president of the Havana & Key-West Cigar Company, Limited, the laws of the United States regulating the manufacture, removal and sale of cigars provided that, before any cigars were removed from any manufactory or place where cigars were made, they should be packed in boxes and that there should be stamped, indented, burned or impressed into each box in a legible and durable manner, the number of cigars contained therein and the number of the manufactory where said cigars were made, and affixed a penalty for the non-compliance therewith; and the said promissory notes sued on are two of the notes made and delivered to the said Horace B. Kelly in consideration of the promises and understandings and agreements aforesaid and are wholly void; all of which the said plaintiffs well knew at the time of the alleged transfer of the said notes to them; and this the defendant is ready to verify."

The second and third pleas were so nearly identical with the first that they need not be set forth. The pleas of February 2, 1903, set up the same defenses in substance, coupled with the allegation that at the time of the endorsement each of the endorsees had notice of the contract alleged to have formed the consideration of the notes. All these pleas were separately demurred to, special grounds being assigned to this effect; that neither of the pleas stated facts constituting any defense; that the consideration of the notes sued on was the promise of Horace R. Kelly to have cigars manufactured in Key West, and neither of the pleas alleged a breach of the promise; that neither of the pleas averred that the alleged proposed contract between the two companies in the plea stated, and alleged to be illegal, was ever consummated or executed or anything done thereunder; that if cigars were manufactured in Key West, under the said contract between

the said two companies in the said pleas stated, the defendant and his intestate derived the same benefit and received the same consideration for the said notes, whether said contract was legal or illegal.

The demurrers were severally sustained, the case went to judgment in favor of plaintiff, and was taken on error to the Supreme Court of Florida. The errors assigned there, so far as these pleas were concerned, were simply that the trial court erred in sustaining the demurrer in each instance. The Supreme Court affirmed the judgment, whereupon a writ of error from this court was allowed by the Chief Justice of that court, who certified, in substance, that the judgment denied "a title, right, privilege or immunity specially set up and claimed by the plaintiff in error under the statutes of the United States of America."

Six errors were assigned in this court, namely, that the state court erred in holding that the demurrer to the first plea of March 24, 1900, was properly sustained, and that the plea constituted no defense under section 3397 of the Revised Statutes; and as to the second plea and section 3393, Revised Statutes; and as to the third plea and section 3390, Revised Statutes; and in so holding as to the fourth plea, filed February 2, 1903, and section 3397, Revised Statutes; and as to the fifth plea of that date, and section 3393, Revised Statutes; and as to the sixth plea of that date, and section 3390, Revised Statutes.

The case was submitted on motions to dismiss or affirm.

*Mr. Richard H. Liggett* for plaintiff in error:

This court has jurisdiction. A Federal question is involved. A right construction of §§ 3390 *et seq.*, of Rev. Stat., invalidated these notes, and the decision of the state court was against the immunity from liability so claimed. *Dubuque & Si. C. R. R. Co.* v. *Richmond*, 15 Wall. 3; *Railway Co.* v. *Renicke*, 102 U. S. 180; *Anderson* v. *Carkins*, 135 U. S. 483; *McCormick* v. *Bank*, 165 U. S. 545, 546.

While the certificate of the Chief Justice of the Supreme Court of the State could not give jurisdiction to this court, it may be resorted to, in the absence of an opinion, to show that a Federal question, otherwise presented in the record, was actually passed upon by the court. *Gulf &c. R. Co.* v. *Hewes,* 183 U. S. 66.

*Mr. H. Bisbee* and *Mr. George C. Bedell* for defendant in error:

As to the question of jurisdiction:

It was proper for the state Supreme Court to decide that as the part of the plea setting up an intention in the future to violate a statute could not be legally proven, it was not necessary for it to decide whether the alleged illegal part of a contract made the notes void or not.

This court is without jurisdiction for the further reason that the plea does not set up any personal right, or personal right of property under any act of Congress, but sets up a right of a third party to-wit: the United States to have the revenue laws enforced. This proposition is maintained in the following cases: *Austin* v. *Anderson,* 7 Wall. 694; 6 Rose's Notes, 1066; *Long* v. *Converse,* 91 U. S. 114; *Conde* v. *York,* 168 U. S. 648. Setting up a title in the United States by way of defense is not claiming a personal interest affecting the subject in litigation. *Hale* v. *Gaines,* 22 How. 160.

Under § 25, judiciary act, it is not every misconstruction of an act of Congress, which can be reëxamined. The decision must have been against some right, etc., so claimed under such act. *Montgomery* v. *Hernandez,* 12 Wheat. 129. And see also *Udell* v. *Davidson,* 7 How. 769; *Walworth* v. *Kneeland,* 15 How. 348; *Railroad Co.* v. *Morgan,* 160 U. S. 288; *Railroad Co.* v. *Fitzgerald,* 160 U. S. 557; *Gill* v. *Oliver,* 11 How. 529, peculiarly applicable.

The mere abstract right, if any, in the makers of the notes to have the Federal statute complied with without alleging any injury to them, is unimportant, and a moot question.

*Hooker* v. *Burr*, 194 U. S. 419; *Dibble* v. *Land Co.*, 163 U. S. 69; *Eustis* v. *Bolles*, 150 U. S. 361; *Klinger* v. *Missouri*, 13 Wall. 257.

Although the promise of the payee in an independent contract, or the act to be done as the consideration of a promissory note, is a violation of an act of Congress, still the note is not void, unless the act of Congress expressly declares the note void, which is not this case. Tiedeman on Commercial Paper, §§ 178, 280; 21 Wall. 241, 248; 4 Ency. of Law, 2d ed., 191, 192; *Harris* v. *Rummels*, 12 How. 79; 5 Rose's Notes, 70.

In such a case as this no one can raise the question but the United States. *Thompson* v. *St. Nicholas Bank*, 146 U. S. 240, 250; *Armstrong* v. *Bank*, 133 U. S. 467; *Armstrong* v. *Toler*, 11 Wheat. 258.

And assuming that Kelly's contract was performed, the makers of the notes after such performance, and after receiving the consideration expected, cannot plead as a defense that such contract was illegal or void. *Brooks* v. *Martin*, 2 Wall. 70; *Kimbro* v. *Burdett*, 22 How. 256; and see also 11 Wheat. 258; 2 Rose's Notes, 482.

The asserted Federal element was too remote and frivolous. *Blythe* v. *Hinckley*, 180 U. S. 333.

Mr. Chief Justice Fuller, after making the foregoing statement, delivered the opinion of the court.

The only ground on which our jurisdiction can be maintained is that defendant specially set up or claimed some title, right, privilege or immunity under a statute of the United States, which was denied by the state court. The Supreme Court of Florida gave no opinion, and, therefore, we are left to conjecture as to the grounds on which the pleas were held to be bad, but if the judgment rested on two grounds, one involving a Federal question and the other not, or if it does not appear on which of two grounds the judgment was based, and the ground independent of a Federal question is sufficient

in itself to sustain it, this court will not take jurisdiction. *Dibble* v. *Bellingham Bay Land Company*, 163 U. S. 63; *Klinger* v. *Missouri*, 13 Wall. 257; *Johnson* v. *Risk*, 137 U. S. 300. And we are not inclined to hold that if in the view of the state court the promise of Kelly to manufacture cigars at Key West was the consideration of the notes and had been performed, and the makers could not defend on the ground that it was contemplated between Kelly and Rosen that the cigars should be removed without compliance with the revenue laws, a Federal question was decided in sustaining the demurrers to the pleas.

But, apart from that, no title, right, privilege or immunity under a statute of the United States, within the intent and meaning of section 709 of the Revised Statutes, was specially set up or claimed by defendant and decided against him.

Sections 3390, 3393, and 3397 of the Revised Statutes are regulations to secure the collection of the taxes imposed by chapter 7, Tit. 35, and defendant could derive no personal right under those sections to enforce the repudiation of his notes, even although, on grounds of public policy, they were illegal and void.

In *Walworth* v. *Kneeland*, 15 How. 348, it was held, as correctly stated in the headnotes:

"Where a case was decided in a state court against a party, who was ordered to convey certain land, and he brought the case up to this court upon the ground that the contract for the conveyance of the land was contrary to the laws of the United States, this is not enough to give jurisdiction to this court under the twenty-fifth section of the judiciary act.

"The state court decided against him upon the ground that the opposite party was innocent of all design to contravene the laws of the United States.

"But even if the state court had enforced a contract, which was fraudulent and void, the losing party has no right which he can enforce in this court, which cannot therefore take jurisdiction over the case."

And Mr. Chief Justice Taney said: "But if it had been otherwise, and the state court had committed so gross an error as to say that a contract, forbidden by an act of Congress, or against its policy, was not fraudulent and void, and that it might be enforced in a court of justice, it would not follow that this writ of error could be maintained. In order to bring himself within the twenty-fifth section of the act of 1789, he must show that he claimed some right, some interest, which the law recognizes and protects, and which was denied to him in the state court. But this act of Congress certainly gives him no right to protection from the consequences of a contract made in violation of law. Such a contract, it is true, would not be enforced against him in a court of justice; not on account of his own rights or merits, but from the want of merits and good conscience in the party asking the aid of the court. But to support this writ of error, he must claim a right which, if well founded, he would be able to assert in a court of justice, upon its own merits, and by its own strength." p. 353.

The certificate on the allowance of the writ of error could not in itself confer jurisdiction on this court, *Fullerton* v. *Texas*, 196 U. S. 192, 194; and the result is that the writ of error must be

*Dismissed.*