## STEMBRIDGE *v.* GEORGIA.

No. 474.  Argued April 22, 1952.—Decided May 26, 1952.

Petitioner argued the cause and filed a brief *pro se.*

*M. H. Blackshear, Jr.,* Deputy Assistant Attorney General of Georgia, argued the cause for respondent. With him on the brief were *Eugene Cook,* Attorney General, *Lamar W. Sizemore,* Assistant Attorney General, and *C. S. Baldwin, Jr.* for respondent.

MR. JUSTICE MINTON delivered the opinion of the Court.

Petitioner was convicted of voluntary manslaughter for the fatal shooting of an eighteen-year-old woman in an altercation growing out of a business transaction. A second woman was wounded in the affray. At his trial, petitioner claimed that he killed the deceased in self-defense. The jury obviously did not believe him or it would not have found him guilty of voluntary manslaughter. He appealed to the Court of Appeals of Georgia which affirmed the conviction on July 12, 1950. *Stembridge* v. *State,* 82 Ga. App. 214, 60 S. E. 2d 491. Certiorari to the Supreme Court of Georgia was denied.

Petitioner thereafter filed in the trial court what he called an "Extraordinary Motion for New Trial." This motion alleged that after the appellate proceedings above mentioned, petitioner for the first time, to wit, September, 1950, discovered new evidence which, had he known of and been able to use, would have resulted in his acquittal. He supported the motion with affidavits of ten of the jurors in the case stating that had this evidence been before them, they "would have never agreed to any verdict except one of not guilty . . . ."

The newly discovered evidence consisted of a conflict between a written statement made by Mrs. Mary Harri-

son, the other woman who was shot in the affray, and her testimony at the trial. Petitioner could not contend that he was unaware of the existence of this statement because the police investigator who recorded it was cross-examined at length about the statement and its contents by petitioner's counsel at the trial. Petitioner claims only that he did not know of the conflict between the statement and Mrs. Harrison's testimony at the trial until after the trial was over. The statement was made by Mrs. Harrison in the hospital, shortly after she was shot. It is not sworn to. At least, there is no jurat exhibited as a part thereof. This statement, often referred to as a dying declaration, and the copy thereof remained at all times in the hands of the police. Since Mrs. Harrison did not die, the State could not use the statement as a dying declaration. Ga. Code, § 38–307 (1933).

The motion alleges that at petitioner's trial, Mrs. Harrison testified that he "did go into the third room of the house and that he did shoot Emma Johnekin after he had already wounded her in the front of the house, and after she had seated herself on a trunk in this rear room." The house where the shooting occurred consisted of three rooms, in line from front to rear, and a kitchen. The statement made by Mrs. Harrison while in the hospital, which is allegedly in conflict with her testimony, was "and Emma [deceased] never got out of the front bed room until after the men [Stembridge and Terry] had already gone."

This motion for a new trial based on newly discovered evidence was denied by the trial court. The Court of Appeals affirmed on the ground that the evidence was impeaching only and under the Georgia Code, § 70–204, was not the basis for the granting of a new trial. *Stembridge* v. *State,* 84 Ga. App. 413, 415–416, 65 S. E. 2d 819, 821. This judgment was entered June 5, 1951.

Petitioner then filed a motion for rehearing in the Court of Appeals and for the first time attempted to raise the question of his federal constitutional rights under the Fourteenth Amendment. He contended that he had been denied equal protection and due process in that the State had used Mrs. Harrison's testimony to obtain his conviction with knowledge that it was perjured. The motion for rehearing was denied July 17, 1951, in these words: "Upon consideration of the motion for a rehearing filed in this case, it is ordered that it be hereby denied." On September 12, 1951, the Supreme Court of Georgia denied certiorari without opinion. On September 17, 1951, the Court of Appeals, at petitioner's request, stayed the remittitur for ninety days to enable him to apply to this Court for certiorari.

On October 22, 1951, petitioner sought and obtained from the Court of Appeals of Georgia an amendment of the record in the following words:

"In the consideration by this court of the rehearing which raised the Federal question that 'the placing in this case, by the State, of evidence known to be perjured seeks to deprive plaintiff in error of liberty without due process of law in violation of Section 2–103 of the Constitution of Georgia and in violation of the 14th Amendment to the Constitution of the United States,' this court considered the constitutional question thus raised and decided it · against the contentions of the plaintiff in error. In so doing this court considered Sec. 110–706 of the Code of Georgia of 1933 which provides as follows: 'Any judgment, verdict, rule or order of court, which may have been obtained or entered up, shall be set aside and be of no effect, if it shall appear that the same was entered up in consequence of corrupt and wilful perjury; and it shall be the duty of the court

in which such verdict, judgment, rule or order was obtained or entered up to cause the same to be set aside upon motion and notice to the adverse party; but it shall not be lawful for the said court to do so, unless the person charged with such perjury shall have been thereof duly convicted, and unless it shall appear to the said court that the said verdict, judgment, rule or order could not have been obtained and entered up without the evidence of such perjured person, saving always to third persons innocent of such perjury the rights which they may lawfully have acquired under such verdict, judgment, rule, or order before the same shall have been actually vacated and set aside'; and Burke v. State, 205 Ga. 656, et seq. which is a decision of the Supreme Court of this State and is therefore binding on this Court, and in which the Constitutional question raised by the plaintiff in error was decided adversely to his contentions. The decision of this Court on the rehearing in question being adverse to the plaintiff in error necessarily brought into consideration the question of whether the rights of the plaintiff in error as guaranteed to him under the 14th Amendment to the Constitution of the United States had been violated, and such decision necessarily determined that such rights had not been so violated. The decision by this court denying the rehearing necessarily determined that the action of the Solicitor General as shown by the record did not deprive the plaintiff in error of any rights guaranteed to him under the 14th Amendment of the Constitution of the United States; also the decision of this court necessarily applied the Fourteenth Amendment to the Constitution of the United States to Sec. 110–706 of the Code of Georgia of 1933 and decided that its application in this case did not amount to an

abridgement of any of the rights of the plaintiff in error guaranteed to him under the 14th Amendment to the Constitution of the United States; and also that this Court necessarily considered Burke v. State, 205 Ga. 656, which is a decision of the Supreme Court of this State by which this Court is bound and which must be followed by this Court, the effect of which is to hold that it does not abridge any of the rights of the plaintiff in error guaranteed to him under the 14th Amendment to the Constitution of the United States."

Review of this amending order, which purported to pass upon the constitutional question raised in the motion for rehearing, was not sought in the Supreme Court of Georgia. Instead, certiorari was sought here and granted. 342 U. S. 940.

First, since the Supreme Court of Georgia, which was the highest court of the state in which a decision could be had in this case, was not asked to pass upon and did not pass upon the purported amending order, we have no occasion to consider its effect.

Secondly, at the time the petition for certiorari was denied by the Supreme Court of Georgia, there appeared in the petition the following recital:

"This judgment and decision of the Court of Appeals in this case in failing and refusing to decide applicant's case in accordance with Sec. 2–3708 of the Constitution of Georgia also violates article 1, sec. 1, par. 3 of the Constitution of Georgia (Code § 2–103) and the Fourteenth Amendment to the Constitution of the United States (Code Sec. 1–815); both of which sections provide that no person shall be deprived of his liberty without due process of law; and article 1, sec. 1, par. 2, of the Constitution of the State of Georgia and the Fourteenth Amendment to

the Constitution of the United States (Code § 1–815), guaranteeing to all persons equal protection of the law."

It is apparent from the record that the Supreme Court of Georgia took no action upon the question of federal constitutional rights raised for the first time on the motion for rehearing in the Court of Appeals. This was in accord with its rule that constitutional questions must first be raised in the trial court. *Beckmann* v. *Atlantic Rfg. Co.*, 181 Ga. 456, 182 S. E. 595. The attempt to raise the question of constitutional rights in the general terms of the above quotation from the petition for certiorari did not begin to meet the requirement of the Supreme Court of Georgia for definiteness. *Persons* v. *Lea*, 207 Ga. 384, 61 S. E. 2d 832.

At this stage, the Supreme Court of Georgia could have denied certiorari on adequate state grounds. Where the highest court of the state delivers no opinion and it appears that the judgment *might* have rested upon a nonfederal ground, this Court will not take jurisdiction to review the judgment. *Hedgebeth* v. *North Carolina*, 334 U. S. 806; *Woods* v. *Nierstheimer*, 328 U. S. 211; *White* v. *Ragen*, 324 U. S. 760; *McGoldrick* v. *Gulf Oil Corp.*, 309 U. S. 2; *Woolsey* v. *Best*, 299 U. S. 1; *Lynch* v. *New York ex rel. Pierson*, 293 U. S. 52; *Cuyahoga Power Co.* v. *Northern Realty Co.*, 244 U. S. 300, 303–304; *Adams* v. *Russell*, 229 U. S. 353, 358–362; *Allen* v. *Arguimbau*, 198 U. S. 149, 154–155; *Johnson* v. *Risk*, 137 U. S. 300, 307; *Klinger* v. *Missouri*, 13 Wall. 257, 263.

The amending order of the Georgia Court of Appeals does not, in our view, change the posture of this case—it does not remove the strong possibility, in light of Georgia law, that the Supreme Court of Georgia might have rested its order on a nonfederal ground. We are without jurisdiction when the question of the existence of an

adequate state ground is debatable.   *Bachtel* v. *Wilson,* 204 U. S. 36.

The petition for certiorari was improvidently granted, and the case is dismissed.

*Dismissed.*

MR. JUSTICE REED, concurring.

While I think the better course would be to affirm the decision of the Georgia courts, I join in the judgment of this Court.

MR. JUSTICE BLACK, MR. JUSTICE FRANKFURTER and MR. JUSTICE BURTON dissent from the dismissal.