**STATE of Missouri, Respondent,**

v.

**Courtney Lorenzo BEASLEY, Appellant.**

No. 51564.

Supreme Court of Missouri,
Division No. 1.

July 11, 1966.

Norman H. Anderson, Atty. Gen., Jefferson City, James T. O'Brien, Asst. Atty. Gen., St. Louis, for respondent.

Marvin S. Wood, Clayton, for appellant.

HYDE, Judge.

Defendant was found guilty of first degree murder by a jury, which assessed his punishment at imprisonment for life, and he was sentenced accordingly. Defendant has appealed from this judgment and sentence.

Defendant's principal contention is error in admitting defendant's signed statement claimed to have been obtained in violation of his constitutional privilege against self-incrimination under the Fifth

Amendment to the United States Constitution. The State contends this claim and other matters raised in defendant's brief cannot be considered because defendant's motion for new trial was not filed within the time fixed by the court, which was Friday, April 30, 1965. The motion was shown filed on Monday, May 3, 1965, which was within the time the court could have granted under Criminal Rule 27.20(a), V.A. M.R. Thereafter, on June 16, 1965, the motion was taken up and overruled by the court. We consider that we should rule on this contention under Rule 27.20(c) because a coerced confession can be challenged in a federal habeas corpus proceeding. In Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 836, 9 L.Ed.2d 837, it is said of a coerced confession: "That complaint is * * * of a wrong so fundamental that it made the whole proceeding a mere pretense of a trial and rendered the conviction and sentence wholly void. Moore v. Dempsey, [261 U.S. 86, 43 S.Ct. 265, 67 L.Ed. 543] * * *. [A]nd the proceeding thus vitiated could be challenged in any appropriate manner." See also Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653. Thus if the contention is true that defendant's confession was inadmissible, as being procured in violation of the Fifth and Fourteenth Amendments, its use would be plain error affecting substantial rights from which we should find that manifest injustice resulted. Therefore, we will consider this contention.

This case involves the charge made in the indictment considered in State v. Brown, Mo., 404 S.W.2d 179, in which this defendant was jointly charged with Richard Brown and the three others therein named; and severances were granted. The evidence in this case (other than defendant's statement) showed substantially the same facts as stated in the opinion in that case, of which we make the following summary. Defendant was with a group of young men from 15 to 18 years old. They got Vernon Coleman, who was 35 years old, to get wine for them and had some argument about Coleman keeping change from this purchase. Whether for this reason or because Coleman did not get more wine, the group of about thirteen of the young men and two girls went to the head of the alley where Coleman lived in a shed. The girls and some of the boys stayed there but at least the five who were indicted went to Coleman's shed to beat him up. They threw sticks, rocks, bricks, bottles at the shed and then defendant and some others went into the shed, defendant lit a match and seeing Coleman in bed, they "started throwing stuff at him." Coleman ran outside, "Jimmie Sharp hit him and he fell, and we all started kicking him, all of us started kicking him and hitting him. * * * With bricks —sticks and bricks and rocks." (Thomas Brown's testimony.) Richard Brown picked up a large cluster of bricks and concrete and dropped it on Coleman. Although no one testified that this cluster struck Coleman's head (only seeing it fall off his chest), an autopsy showed Coleman died of a skull fracture and resulting cranial hemorrhage. Defendant's statement corroborated these facts as to the assault on Coleman and stated defendant's part in it; namely, that he struck Coleman with his fist and kicked him three or four times when he was on the ground; and he said the suggestion to go to Coleman and "beat him up" was made by Archie Brown.

On the claim of defendant's counsel that defendant's statement, offered in evidence by the State, was not a voluntary statement, the court held a hearing out of the presence of the jury. Defendant did not testify and the only evidence at this hearing was the testimony of an officer who arrested defendant and the testimony of an officer who was present when defendant made the statement. (Defendant's statement was in question and answer form taken by a stenographer.) The testimony of the arresting officer was that he with another officer arrested defendant between 3:30 and 4:00 A.M. at the house where he lived with his aunt and uncle, that defendant was not mistreated, threatened in any way or promised anything to make a statement; and that

"he was very cooperative." This officer was with defendant about an hour and then turned him over to other officers. There was no evidence about defendant being questioned by anyone except by the arresting officer "about a couple of minutes" until the First Assistant Circuit Attorney arrived about 9:30 A.M. and was in charge there all the rest of the morning. The other officer who testified said he arrived at Police Headquarters about 7:30 A.M. but was not sure of the time he first saw defendant; but that around 11:00 A.M. defendant was interrogated in his presence by the Assistant Circuit Attorney. He said he detected no odor of alcohol on defendant's breath as the arresting officer did; and that defendant was alert but seemed tired. There was really no testimony at this preliminary hearing to show any improper action toward defendant. The court found "the statement is a voluntary statement" and admitted it in evidence. It also submitted this issue to the jury.

It appears that statements were taken from five or six of the young men involved, during that morning; that the Assistant Circuit Attorney "talked with all of them together as a group"; and that statements were then taken from them individually. It was an all-morning procedure to take the statements from all the young men, type them and have them read them and sign them; but only about half an hour was required on defendant's statement. Counsel was not offered or requested and there is nothing in the record to show that defendant was told anything more than appears in his statement, as follows:

After stating his name and official capacity the Assistant Circuit Attorney asked defendant:

"Q * * * I am here this morning to ask you if you wish to give a statement concerning a man beaten in the alley in the rear of the 4300 North Market, do you wish to give that statement?

"A Yes, sir.

"Q Has anyone promised you anything? A No, sir.

"Q Has anyone threatened you in any way? A No, sir.

"Q Do you realize this statement you are about to give may be used against you in court? A Yes, sir.

"Q How old are you? A Seventeen."

Defendant then answered questions concerning the assault on Coleman and his part in it.

■ This case was tried after the decision of the United States Supreme Court in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977. Therefore, we are required to follow the rulings in that case by Johnson v. State of New Jersey, No. 762, October Term 1965, 384 U.S. ——, 86 S.Ct. 1772, 16 L.Ed.2d ——. In the Johnson case, the court said: "Apart from its broad implications, the precise holding of Escobedo was that statements elicited by the police during the interrogation may not be used against the accused at a criminal trial, '[where] the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particluar suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent * * *.'" However, this was held to violate not the Fifth Amendment but instead that "the accused has been denied 'the Assistance of Counsel' in violation of the Sixth Amendment to the Constitution as 'made obligatory upon the States by the Fourteenth Amendment,' Gideon v. Wainwright, 372 U.S. [335], at 342, 83 S.Ct. [792], at 795, [9 L.Ed.2d 799], and that no statement elicited by the police during the interrogation may be used against him at a criminal trial." The application of the Fifth Amendment was not discussed in

Escobedo. There is nothing in the record in this case to show defendant asked for consultation with counsel as in Escobedo, or asked to consult anyone, so the question for our determination is whether failure to show it was specifically stated to defendant that he had a right to remain silent prevents the use of his statement as evidence. We note there were such warnings in State v. Russell, Mo.Sup., 395 S.W.2d 151, 153, and State v. Boykins, Mo.Supp., 399 S.W.2d 70, 72. Likewise in State v. Davis, Mo.Sup., 400 S.W.2d 141, 149, it was shown that the defendant "was informed that he need not give a statement."

Escobedo did not hold that if no lawyer has been employed and no request to see a lawyer or anyone else has been denied that a specific statement must be made to one interrogated that he has a right to remain silent, before any statement from him would be admissible. Several cases have interpreted it as not making such a requirement as essential to the admissibility of a statement. See People v. Gunner, 15 N.Y.2d 226, 257 N.Y.S.2d 924, 205 N.E.2d 852, 855–856; State v. Vigliano, 43 N.J. 44, 49–52, 202 A.2d 657; Bean v. State of Nevada, Nev., 398 P.2d 251, 253–255; Browne v. State, 24 Wis.2d 491, 131 N.W.2d 169, 171–172; United States v. Robinson, (USCA 2 Cir.) 354 F.2d 109, 113–115; United States v. Cone, (USCA 2 Cir.) 354 F.2d 119, 125–128. The lack of a statement to Escobedo of his right to remain silent was only one of five factors held to prevent the use of his statement; and this was stated as one of the reasons why his Sixth Amendment right to consult with his available counsel was violated.

■ In the United States Supreme Court, "[t]he test has been whether the totality of circumstances deprived the defendant of a 'free choice to admit, to deny, or to refuse to answer,' Lisenba v. People of State of California, 314 U.S. 219, 241, 62 S.Ct. 280, 292, 86 L.Ed. 166, and whether physical or psychological coercion was of such a degree that 'the defendant's will was overborne at the time he confessed,' Haynes v. State of Washington, 373 U.S. 503, 513, 83 S.Ct. 1336, 1343, 10 L.Ed.2d 513; Lynumn v. State of Illinois, 372 U.S. 528, 534, 83 S.Ct. 917, 920, 9 L.Ed.2d 922. The duration and nature of incommunicado custody, the presence or absence of advice concerning the defendant's constitutional rights, and the granting or refusal of requests to communicate with lawyers, relatives or friends have all been rightly regarded as important data bearing on the basic inquiry." (Dissenting opinion of Justice White in Miranda v. State of Arizona; see also dissenting opinion of Justice Clark therein; see also Davis v. State of North Carolina, October Term 1965, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895.) ° We do not understand that Escobedo changed the totality of the circumstances test (as noted it considered five factors); and we consider it to be the proper test to be applied in determining the admissibility of statements offered in trials occurring prior to June 13, 1966. For trials after June 13, 1966, Miranda v. State of Arizona, October Term 1965, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, imposes new and different rules. Therefore, we consider the totality of the circumstances rule to be the test applicable to this case.

■ Considering the totality of circumstances herein, we find there was no evidence of any interrogation of defendant by anyone (except a couple of minutes by the arresting officer) until the Assistant Circuit Attorney arrived to take charge. Likewise, there was no evidence of incommunicado or even separate confinement but instead the Assistant Circuit Attorney talked to all of the young men involved together as a group. A statement was then taken from each, which after being typed, was then signed by each after reading it or hearing it read. Some of the young men (but not defendant) were within the juvenile court age and there was a juvenile officer present. The first question to defendant was whether he wished to make a statement, giving him the choice of not making a statement. This was followed by

inquiries concerning threats or promises and a warning that a statement could be used against defendant in court. The manner and circumstances of the interrogation indicate freedom of choice to give a statement or remain silent. Neither of the two young men involved, who testified at the trial (one called by the State and one by the defendant) suggested or was even asked at the trial about any coercion, threats, promises, questioning by anyone prior to the arrival of the Assistant Circuit Attorney or any mistreatment of any kind. Thus there was no evidence either at the hearing on the motion to suppress, out of the presence of the jury, or at the trial to show improper action by those having defendant in custody. We, therefore, hold that it appears from the totality of the circumstances that defendant's statement was a voluntary statement and properly admitted in evidence.

Other claims of error in defendant's brief are not considered because not properly preserved for appellate review or even argued in his brief. In any event we would find them to be without merit.

The judgment is affirmed.

All concur.