STATE of Missouri, Respondent,

v.

Joseph Stalin REYNOLDS, Appellant.

No. 52196.

Supreme Court of Missouri,
Division No. 2.

Dec. 11, 1967.

Motion for Rehearing or to Transfer to Court En Banc Denied Jan. 8, 1968.

Norman H. Anderson, Atty. Gen., Jefferson City, Austin B. Speers, Special Ass't. Atty. Gen., Kansas City, for respondent.

J. Whitfield Moody, The Legal Aid and Defender Society of Greater Kansas City, Kansas City, for appellant.

STOCKARD, Commissioner.

Appellant was found guilty by a jury of murder, first degree, and his punishment was assessed at life imprisonment. Sentence and judgment were rendered accordingly, and this appeal resulted. Although appellant was represented at trial by privately retained counsel of his choice, he was permitted to appeal as a poor person and is represented on this appeal by The Legal Aid and Defender Society of Greater Kansas City.

Appellant does not challenge the sufficiency of the evidence, but a brief statement of the facts will provide a helpful background. A jury reasonably could find from the evidence that on the evening of December 23, 1964, appellant and three companions, all of whom were armed, were riding in an automobile when it was suggested that they hold up a merchant by the name of Harry Wienshienk. Appellant and two companions left the automobile, and then appellant and one companion, Calvin Brown, approached Mr. Wienshienk who had left his store and was entering his automobile near the intersection of Twelfth and Tracy Streets in Kansas City,

Missouri. One of them said, "This is a hold up," and Mr. Wienshienk "whirled" and grabbed appellant's gun. In the struggle that followed the gun was discharged. Mr. Wienshienk was shot in the chest and died a few hours later. Appellant and Brown fled the scene, and later when appellant heard that Mr. Wienshienk had died, he attempted to dispose of his gun. The gun was subsequently obtained by the police, and ballistic tests indicated that it was the murder weapon. Three police officers testified to oral statements made to them by appellant wherein he admitted the attempted robbery and the shooting of Mr. Wienshienk.

Appellant's first point is that the trial court "erred in denying his motion to require the State to disclose information which would materially aid him in preparing his defense."

Civil Rule 83.05(e), V.A.M.R., expressly made applicable to briefs filed in criminal cases by Criminal Rule 28.18, V.A.M.R., provides that points relied on shall briefly and concisely state what actions or rulings of the trial court are claimed to be erroneous and briefly and concisely state why it is contended the court was wrong in any ruling sought to be reviewed. This point does not comply with the rule. The "information" sought is not described or identified, and there is no statement as to why the court's ruling is claimed to be in error. For the reason that it appears from argument that appellant contends that he was entitled to the "information" on some federal constitutional ground, we shall rule the contention though inadequately presented, State v. Beasley, Mo., 404 S.W.2d 689, 700, and shall set forth a rather detailed statement of the circumstances.

On December 13, the day on which the trial started, appellant filed a motion to require the prosecuting attorney "to produce forthwith for examination by defendant, [1] copies of all statements, if any, allegedly made by defendant pertaining to the indictment now pending against the defendant, [2] copies of all statements and/or investigation reports in the possession or knowledge of the State which are advantageous to the defense against the charges in the indictment, * * *." This motion was denied, but in the discussion concerning it the court commented that the prosecutor "has indicated that he has no written statement of the defendant," and that "if there were one, I would require him to produce it."

We shall turn now to the assignment of error in the motion for new trial upon which the point in the brief necessarily is based. It is there asserted that the trial court "erred in denying defendant's motion to require the State to disclose to defendant information which would materially aid the defendant in preparing his defense." It is then stated that "several weeks prior to trial" (but, as previously noted the motion to produce was filed the day the trial started) appellant requested the prosecuting attorney "to provide the names of witnesses," and that such request was based on the belief that the State possessed the names of those "who were present at the scene of the crime or shortly thereafter and to whom the victim made a statement." It was further stated, apparently to establish that there were such witnesses, that the testimony of Officer Weddle revealed "the names of two witnesses whose names and addresses were included in his investigation report," and, apparently as evidence of the need for the names before trial, that appellant did not have sufficient time before the conclusion of the trial "to locate the witnesses and produce them for trial."

To summarize, and in an effort to determine and set forth precisely appellant's contentions of error, it is asserted that the trial court erred in refusing to require the prosecution to produce forthwith, that is, *before trial*, "information" consisting of the "names of witnesses" who were "present at the scene of the crime or shortly thereafter and to whom the victim made a statement." By reason of the

cases cited by appellant in argument in support of his motion for new trial and in argument on this appeal, it is apparent that he contends that denial of his motion to produce constituted a denial of due process in violation of the Fourteenth Amendment to the federal Constitution.

In Brady v. State of Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, cited by appellant, it was stated that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Appellant also cites United States ex rel. Meers v. Wilkins, 2 Cir., 326 F.2d 135; Powell v. Wiman, 5 Cir., 287 F.2d 275; and State v. Thompson, Mo., 396 S.W.2d 697. In an article entitled Suppression of Evidence Favorable to an Accused by Judge James M. Carter, 34 F.R.D. 87, it is stated that "defense counsel have seized upon the *Brady* case as a complete innovation and have made it the basis for *motions prior to trial* to inspect *all evidence* in the hands of the prosecution favorable to the accused on the issues of guilt or punishment." However, as Judge Carter points out, the Brady v. State of Maryland case does *not* require the production of the evidence therein referred to *before trial*. None of the other cases cited and relied on by appellant rules that due process requires the prosecution to turn over to an accused *prior to trial* the "information" requested in this case. Appellant does not contend that he was entitled to the "information" before trial for any reason other than the rule announced in Brady v. State of Maryland, supra, and the discovery procedure in this State applicable to criminal cases does not require it. See State v. Aubuchon, Mo., 381 S.W.2d 807, and State v. Spica, Mo., 389 S.W.2d 35.

Near the end of the appellant's evidence, counsel said this: "I would like to renew my motion made prior to the beginning of the testimony in this matter that I be allowed to see the police investigation report or any other data that may be a part of the prosecutor's file that would aid the defense of my client." The precise ruling on this request is not clear. There was considerable discussion between counsel and the court, and at one time the prosecuting attorney commented that appellant's counsel was "referring to newspaper articles that were printed about a year ago," and appellant's counsel agreed that she was. The court also asked appellant's counsel if she had subpoenaed "the records of the police department" and she replied that she had not. During the discussion appellant's counsel was furnished an investigation report made by Officer James who had talked to Mr. Wienshienk at the hospital. Although this report contained hearsay statements it was read to the jury by appellant's counsel without objection on the part of the prosecution.

In our determination whether the rule announced in Brady v. Maryland, supra, required that "information" should have been turned over to appellant in response to the oral request, we shall consider first the "information" set forth in the motion for new trial to which appellant claimed he was entitled to receive, which was the names of witnesses referred to in the testimony of Officer Weddle who "were present at the scene of the crime or shortly thereafter and to whom the victim made a statement."

At the trial Officer Weddle testified that he went to Twelfth and Tracy Streets to investigate the reason for a request for an ambulance. When he arrived he found that Mr. Wienshienk had been shot. He talked to numerous persons whose names he did not know, and he also talked to a Christine Porter and a person whose last name he could not remember but whose name was in his report, and both of these persons stated to him that they had "heard the shots, and after the shots they saw Mr. Wienshienk lying there in the street." There is no indication in the record nor

does appellant claim that either of these persons witnessed the shooting or that either person talked to Mr. Wienshienk. Officer Weddle was the first witness to testify in the trial, and when this testimony was given, apellant's counsel made no request to see Officer Weddle's report, and did not request subpoenas for the two persons referred to by him. Appellant has not demonstrated that either of the persons referred to in the motion for new trial was present at the scene, or that Mr. Wienshienk made a statement to either one, or that the prosecution suppressed any evidence favorable to appellant.

We shall next consider certain "information" set forth in appellant's brief which he asserts should have been made available to him under the rule of Brady v. Maryland. After the trial was over and at the hearing on the motion for new trial, appellant's counsel subpoenaed the entire police file relating to the Wienshienk homicide. No contention is made that the police file revealed any information concerning the two persons mentioned in the testimony of Officer Weddle that counsel for appellant did not already know. At the time of the hearing on the motion for new trial, in an effort to show that the police department file, *not the prosecutor's file,* contained "information" which would have been advantageous to appellant in the preparation of his defense, appellant's counsel offered in evidence an investigation report from the police file made by Officer Zimmerman in which he stated that a "confidential informant" had told him that while he, the informant, was in a cafe he had heard Mary Craddock, a girl friend of Monty Ray Denmon, say that "they, meaning Denmon and his friends, had committed this offense or had shot a man upon 12th Street," and that "she indicated that Denmon was the one who actually pulled the trigger and she did not say who was with him." There was no indication that the "informant" or the police talked to Mary Craddock.

Appellant also showed that in the report of Officer Zimmerman it was stated that Beulah Johnson had said that she was sitting in a rocking chair "just about asleep" when she heard a shot. She then looked out of her window and saw Mr. Wienshienk standing by his automobile with two colored men standing next to him, and that Mr. Wienshienk fell and the two colored men ran away. Appellant also showed that the police file contained a report of a previous interview by Officer Ratteree with Beulah Johnson wherein she was reported to have said that after she heard the shot she saw Mr. Wienshienk lying on the ground and one man, unknown whether white or colored, running away.

Officer Zimmerman and Beulah Johnson were both indorsed on the indictment. As far as shown by the record no effort was made by appellant to interview either of these persons before trial. Officer Zimmerman testified for the State and he was asked on cross-examination whether he had conducted any investigation, and whether he had made a report. He stated that he had made an investigation, that one of the persons he talked to was Beulah Johnson, and that he had made a report of his investigation. No request was made for that report. In his brief to this court, in referring to the statement in the police report by Officer Zimmerman pertaining to what an informant had said he had heard Mary Craddock say, appellant admits that "We believe he [the prosecutor] did not know of it."

■ There is nothing to indicate that this "evidence" or "information" was in any way suppressed. It was not in the hands of the prosecutor, and although we may assume that the police file was available to him, there is no duty on the prosecutor to search records in other offices or departments in an effort to prepare a defense for appellant. Also, the information cannot possibly be considered to be "favorable" to the appellant and "material either to guilt or to punishment" within the mean-

ing of Brady v. Maryland. It was not exculpatory in nature. The "information" furnished by the informant as to what Mary Craddock said can hardly be called "evidence," and the fact that Denmon was reported to have been with appellant at the time of the attempted robbery was known to appellant's counsel, and he could have been interviewed.

■ We deem it inadvisable to attempt in this opinion to state precisely the duties placed on the prosecution by reason of Brady v. Maryland, but we are of the opinion that it does not require the prosecution to comb through material not in its possession in an effort to locate something which, when and if is followed up, might or might not prove to be helpful to the defense, and it does not require that the prosecuting attorney perform the investigation and preparation for trial which normally should be performed by defense counsel. We find no violation of the rule announced in Brady v. State of Maryland.

■ In appellant's reply brief mention is made for the first time to Criminal Rule 25.195, V.A.M.R., in which it is provided that "Upon motion of a defendant the court may order the attorney for the state to permit the defendant to inspect and copy or photograph any relevant (1) written or recorded statements or confessions made by the defendant, or copies thereof, which are known by the attorney for the state to be in its possession, custody or control, * * *." There is no contention in the motion for new trial that the court erred in failing to require the production of a statement of appellant, and there is no such contention in appellant's brief, other than the reply brief. However, for the reason we ruled the last contention, we shall rule this contention.

It is admitted that there was no statement written by defendant or other written statement signed by him. The trial court advised appellant's counsel before the trial started that if there were such a statement it would require its production. During the trial the court held a hearing out of the presence of the jury to determine whether certain oral statements of the appellant made to police officers were voluntary. At that hearing Officer Zimmerman testified concerning his interview with appellant, and that after being advised of his right not to make a statement and that if he did such statement might be used against him, appellant orally confessed to the crime charged against him. The court then asked Officer Zimmerman whether he made "notes of this," and he replied, "as I was going along I made periodical notes," and that he "transferred them to a hand, typewritten report immediately after the interview." Appellant's counsel then asked this: "Did you prepare a written statement at that time?" The answer was "No Ma'am, because he had already told me that he did not wish to make a written statement." As far as shown by the record this is the first time the court or the prosecuting attorney knew that these "notes" had been made and that they had been "transferred" to a typewritten report. Appellant's counsel, then as fully advised as the court or the prosecuting attorney, made no request of any kind to be permitted to see either the notes or the report. Later, Officer Zimmerman testified before the jury. On cross-examination he was asked if he made "any notes regarding this questioning," and he replied that he did, but that he "destroyed the notes after [he] had transcribed the report." Officer Zimmerman did not use the report to refresh his recollection while testifying, and there was no request that the report be made available to appellant or that he be permitted to inspect it.

Appellant argues that "the record taken as a whole indicates that the prosecuting attorney had in his possession a police report containing defendant's oral confession." We do not rule whether this typewritten report in which Officer Zimmerman had "transcribed" the "notes" constituted a written or recorded statement or confession within the meaning of Criminal Rule 25.195.

Assuming that the prosecuting attorney knew of the report, it did not consist of a written or recorded statement or confession of the accused as that term is generally understood. But, more important, after the existence of the report first became known to the trial court and to appellant's counsel, no request whatever was made for its production. Under these circumstances appellant cannot now complain on appeal that the trial court erred in not requiring the report to be made available to him. We note further, that after trial appellant obtained by subpoena the entire police file on the investigation of the Wienshienk homicide, which presumably contained this report by Officer Zimmerman. Appellant, by argument or otherwise, points to nothing in that report which resulted in prejudice to him by not seeing the report earlier. We find no violation of Criminal Rule 25.195.

■ In appellant's second point he asserts that the trial court erred in denying him a continuance "so that he might have sufficient time to locate and produce the witnesses mentioned" in his first point. This would necessarily refer to the two persons mentioned by Officer Weddle in his testimony, but we find no request for a continuance in order to locate them. Also, as previously mentioned, no subpoena was requested for them. If by any reason it could be construed that the "witnesses" referred to Mary Craddock and Beulah Johnson, no specific request was made, Beulah Johnson was indorsed on the indictment, and there is no showing that Mary Craddock had knowledge of anything to which she could testify. In addition to the point being inadequate, it has no merit.

■ Appellant next asserts in three separate points that the court erred in refusing his motions for mistrial pertaining to the qualification and use of an alternate juror. An alternate juror was selected, and during the trial one of the members of the regular jury was excused, and the alternate juror participated in the determination of the verdict. In his brief to this court appellant makes this statement: "The record discloses that the trial court strictly followed the provisions" of Section 494.065, V.A.M.S., which authorizes the selection of an alternate juror. In appellant's brief it is argued that the alternate juror "was a member of the original panel and was excused; that when he returned to the jury room he had an opportunity to discuss the case with other jurymen who could have prejudiced him against the defendant, and that he might have carried this prejudice with him into the jury box." Appellant's counsel questioned the alternate juror on voir dire. There is no contention that any unauthorized discussion took place, and the record discloses no basis for finding or even assuming that the alternate juror was prejudiced against appellant. Appellant concludes in his brief that "no decision" has been found "holding that such a possibility would disqualify" the person selected as an alternate juror. Appellant has not met his burden to demonstrate prejudicial error.

■ Appellant's last point is that the trial court erred "in admitting into evidence his alleged oral admission, that said alleged admission was not voluntary and was induced by intimidation of the police officer," and also that error resulted from "the denial of the assistance of counsel in violation of the Sixth Amendment of the Constitution of the United States as made obligatory upon the states by the Fourteenth Amendment."

The trial court conducted a hearing out of the presence of the jury on the issue of the voluntariness of the oral statements made by appellant to police officers. Officer Johnson testified that before questioning appellant he told him that "being questioned" was a "voluntary thing," and that he did not have to answer any questions. He also testified that he told appellant that he had a "right to counsel," and that he could telephone anyone. He added that ap-

pellant did not ask to see an attorney, and that "had he asked, then the interview would have been terminated." Officer Zimmerman testified that appellant was "advised of his constitutional rights," and was told that he did not have to make a statement. Appellant was also told, according to Officer Zimmerman, that he had a right to counsel, could contact counsel, and that anything he might say could be used against him in the event of a trial. Appellant did want to make a telephone call, and was permitted to do so, and according to Officer Zimmerman, appellant said that he did not wish to have his attorney present at that time. Appellant testified at this hearing. He stated that "they [referring to the police officers] advised me of my rights," and he further testified that he was told that he did not have to make a statement, and that either an oral or written statement could be used against him. He also testified that he told them he wanted to call his lawyer and his mother, and "they allowed me to make calls." He talked to his father by telephone and apparently did not reach a lawyer. He did not testify that he told the police officers he wanted his lawyer present; neither did he testify that that was his wish. He admitted in his testimony that he was shown a gun by the police officers which they had obtained, and that he identified it and told them it was his. He testified that he told the police officers that he knew nothing about the homicide, but that he had known Mr. Wienshienk. Appellant did not contend in his testimony that he had been coerced in any way. The only difference between his testimony and that of the police officers was as to what appellant was supposed to have said to the officers in answer to their questions.

The trial court held, as a result of the hearing out of the presence of the jury, that the oral statements of appellant were voluntarily made. The police officers were then permitted to testify before the jury, and after stating that appellant had been advised of his rights as above set out, they related to the jury what appellant had said to them concerning his participation in the attempted robbery and homicide of Officer Wienshienk. Appellant elected not to testify before the jury. The record shows compliance with the rule announced in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908. The conclusion of the trial court that the oral statements of appellant were voluntarily made was not only authorized, but under the testimony was practically compelled.

■ There is no merit to the contention that at the time of his questioning appellant was denied the right to confer with counsel or to have counsel present. Although the trial of this case occurred before the opinion was handed down in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974, and the rules there announced are not retroactive, Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882, the record shows no infringement of those rules. In addition, appellant admitted that he was permitted to and did make telephone calls, and in his testimony he made no contention that he objected to being questioned without counsel being present. The factual situation of this case does not bring it within the rule announced in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977.

We have examined those parts of the record required under Criminal Rule 28.02 and find no error.

The judgment is affirmed.

BARRETT and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.