**STATE of Missouri, Respondent,**

**v.**

**Johnny PRICE, Appellant.**

**No. 52731.**

Supreme Court of Missouri,
Division No. 1.

Dec. 11, 1967.

Motion for Rehearing or to Transfer to Court
En Banc Denied Jan. 8, 1968.

Norman H. Anderson, Atty. Gen., Jefferson City, Harry J. Mitchell, Special Asst. Atty. Gen., Palmyra, for respondent.

J. Whitfield Moody, and J. Arnot Hill The Legal Aid and Defender Society of Greater Kansas City, Kansas City, for appellant.

HENLEY, Presiding Judge.

Defendant was charged by information with burglary in the second degree and stealing. Trial before a jury began on September 20, 1966, and on the following day a verdict was returned finding him guilty and assessing his punishment at four years for burglary and two years for stealing. His motion for new trial was overruled and judgment was entered sentencing him in accordance with the verdict, the sentences to run consecutively. He appeals. He was represented by court-appointed counsel in the trial court and is represented here by the same counsel, who has filed a brief, reply brief and has presented oral argument.

A brief statement of the facts will suffice. On Sunday night, May 15, 1966, defendant and a companion were apprehended by officers of the Kansas City, Missouri Police Department inside Manfield Tavern owned and operated by Morris Riesman

at 1031 East 12th Street in Kansas City. The tavern had been closed and securely locked by its owner the night of the 14th at about 1:30 A.M. Entry was gained by first breaking open a rear door into a hallway adjoining the tavern on the west; from the hallway, entrance was gained into a toilet of the tavern by cutting a large hole in the hallway wall; from the toilet, entrance was easily made into the tavern by merely opening a door. When first observed by the officers, defendant and his companion were leaving the tavern through the toilet, defendant holding a cigar box and his companion carrying a large pasteboard box. They were apprehended inside the toilet. The cigar box contained approximately $200 in currency and change, the property of Riesman; the larger box contained several bottles of whiskey and other articles, also the property of Riesman. Between observation by the officers and his apprehension, defendant attempted to escape. These facts alone would warrant the jury in finding defendant guilty of second degree burglary and stealing.

Defendant briefs one point: that the court erred in admitting in evidence his oral confession made at the police station, because the confession was secured in violation of his rights under the Fifth Amendment to the Constitution of the United States in that, before his confession, he was not advised of his right to counsel and, more particularly, that he was not advised that if he could not employ counsel the court would appoint counsel for him. He cites Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 and State v. Martin, Mo., 411 S.W.2d 215, and asserts that since this case was tried after June 13, 1966, it is governed by the additional safeguards defined by *Miranda*.

Detective Bert Cool of the Kansas City Police Department testified at a hearing before the court outside the presence of the jury and, later, in the presence of the jury, that he had interrogated defendant at the Admiral Boulevard Police Station

shortly after defendant had been taken in custody the night of May 15, 1966; that he first advised defendant of his constitutional rights; that defendant then confessed the crime, giving the details as to how he and his companion had broken into the Tavern, what they stole, and how they were arrested. At the close of the hearing outside the presence of the jury, the court ruled that the confession was voluntary. As the jury was being returned to the courtroom, counsel for defendant made the following objection:

"MR. HILL: I assume that Mr. Schollars is now going to question the officer as to the statement that we have heard outside, and I want to place this objection. We object to the jury hearing the officer's testimony as to anything that this defendant told him, for the reason that there has been no showing that there was an intelligent waiver on the part of this defendant of his constitutional rights, that he was not fully advised of his constitutional rights and for that reason we object to the statement going into evidence."

The objection was overruled and Detective Cool proceeded with his testimony before the jury. This testimony, essentially the same as that given outside the presence of the jury, was as follows:

"Q (By Mr. Schollars) Detective Cool, when you arrived at the Number 1 Police Station on May 15th, 1966 at Admiral and Charlotte, did you have occasion to have conversations with the defendant, Johnny Price?    A Yes, sir."

\*    \*    \*    \*    \*    \*

"Q Would you please tell me what the conversations were?

"A I found the defendant in a room, an interrogation room, I walked in. I introduced myself as Detective Bert Cool of the Kansas City, Missouri Police Department. I advised him that he did not have to talk to me under his constitutional rights, that he was entitled to consult friends or attorneys, and anything that he did say to

me could be used against him in the event of a trial, and he waived this right—"

\* \* \* \* \* \*

"Q \* \* \* What was his response when you told him that he could have an attorney or he could call a friend too or remain silent? A He said he didn't care to, and he just proceeded to tell me what he was doing, so I started to question him, why he was found where he was, and he decided to tell me."

\* \* \* \* \* \*

"Q \* \* \* Now, Officer, after advising the defendant as you have testified to, what conversations took place, tell the jury, what did the defendant say?

"A I asked the defendant what he was doing at this location at 1031 East 12th and he stated to me that he and his friend, Brackson, had been broke and they decided to break into some place and he thought of this place that is known as Manfield Tavern, that he and his friend specifically went to Manfield Tavern to break into it and steal what they could get out of it for money. They went to the rear, they forced this rear door which leads to the—which is a stairway that leads to an old abandoned hotel, they went in, they tore the—took a screw driver and tore the board and the plaster wall off from the east wall of the stairway, which allowed them to enter into the women's restroom of Manfield Tavern. They crawled through the restroom, they entered the tavern and they gathered up what they thought they could dispose of for cash, and as they were leaving they were met at this hole in the wall by two district men who arrested them at the scene on the inside of the Manfield Tavern."

The Supreme Court of the United States, in summarizing its decision in *Miranda,* at page 1630 of 86 S.Ct., held that where an individual is taken into custody by the authorities and is subjected to questioning, each of these procedural safeguards are required and must be employed to protect his privilege against self-incrimination: (1) he must be warned prior to any questioning that he has the right to remain silent, (2) that anything he says can be used against him in a court of law, (3) that he has the right to the presence of an attorney, and (4) that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. "After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement." 86 S.Ct. 1. c. 1630.

Detective Cool's warnings obviously did not contain all the elements required by *Miranda.* As now contended by defendant, it did not contain the requirement that the police "\* \* \* make known to him \* \* \* that if he cannot afford one, a lawyer will be provided for him prior to any interrogation." 86 S.Ct. 1. c. 1628 [47, 48]. Therefore, defendant says, the court erred in permitting Detective Cool to relate the confession to the jury and its use against him should not have been permitted.

The state does not contend that defendant waived these rights and agreed to make a statement. However, it does contend that his one objection, "\* \* \* that he was not fully advised of his constitutional rights \* \* \*," was too general to call the attention of the court to the particular ground or reason why the confession should have been excluded; that the objection was insufficient to call attention to what constitutional right would be violated by admission of the confession in that the objection did not specify that the fourth requirement of *Miranda* had not been met before interrogation by Detective Cool. The state further contends that the failure to raise this *Miranda* objection at the trial precludes its being raised on appeal.

■ The objection is too broad in referring to general constitutional rights. The objection is so stated that it could refer to any right guaranteed an individual by the

federal constitution. And there are many in addition to the fourth element of the Fifth Amendment as delineated by the Court in *Miranda* approximately three months before this case was tried.

■ Under *Miranda* police authorities are required to follow scrupulously each and all of four specific procedural safeguards or rights the Court delineates as Fifth Amendment rights of an individual in custody or otherwise deprived of his freedom. To insure the enforcement of these rights, the Court further said, 86 S.Ct. 1. c. 1630, "But unless and until such warnings * * * are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him." Thus, if the state proves that the authorities afforded him three of these rights but fails to prove they afforded him the fourth, evidence obtained from him is inadmissible. Should an objection be held to be sufficient to preserve for review Fifth Amendment rights, as so delineated, where the objection fails to specify which of those rights have not been afforded the defendant? No. He is required to be as specific in stating the grounds or reasons for his objection as the authorities are required to be specific in advising him of each of his rights. Defendant's objection does not even refer to which Article of or Amendment to the Constitution he has reference; hence, it refers to *all* rights guaranteed the individual, and to *none* specifically. In State v. Griffin, Mo., 339 S.W.2d 803, this court said, at 1. c. 805: "Unless the evidence is wholly inadmissible for any purpose, a general objection, one not stating reasons, preserves nothing for appellate review * * *," and, in referring to the requirements for preserving constitutional issues for review, said, at 1. c. 806: " 'The sections of the Constitution claimed to have been violated must be specified * * * and the facts which constitute such violation must be narrated.' "

■ In State v. Meiers, Mo., 412 S.W. 2d 478, 481, the court said: "Our rule is that constitutional questions must be raised in the trial court at the earliest opportunity consistent with orderly procedure; they may not be raised for the first·time in the appellate court. The defendant in a criminal case, if he proposes to raise a question pertaining to the violation of such right, must object to the introduction of his confession or admission, *clearly and specifically stating his constitutional grounds for the objection;* otherwise, the introduction of his confession or admission will not be sufficient basis for an assignment of error in his motion for new trial. His motion for new trial must present and direct the trial court's attention to his trial objections by clearly stating with particularity his constitutional grounds. In other words, his constitutional grounds for objection must be kept alive and preserved throughout the case. State v. Smith, Mo., 310 S.W. 2d 845, 850–851 [6–7]; State v. Johnstone, Mo., 335 S.W.2d 199, 207 [18–19]; Stembridge v. State of Georgia, 343 U.S. 541, 72 S.Ct. 834, 96 L.Ed. 1130; Michel v. State of Louisiana, 350 U.S. 91, 76 S.Ct. 158, 100 L.Ed. 83." (Emphasis added.) See also: State v. Turnbough, Mo., 388 S.W. 2d 781, 787 [9]; People v. Cabrellis, Cal. App., 59 Cal.Rptr. 795, 798 [1]; United States v. Armetta, (Second Circuit), 378 F. 2d 658, 661 [4]; Gaudio v. State of Maryland, 1 Md.App. 455, 230 A.2d 700, 704–705 [2–6].

By failing to make proper objection to the admission of his confession, defendant failed to preserve for review the only point raised in his brief.

Our examination of other matters we review under Rule 28.02, V.A.M.R. discloses no error.

The judgment is affirmed.

STORCKMAN, J., concurs.

SEILER, J., dissents in separate dissenting opinion filed.

## Dissenting Opinion

SEILER, Judge.

I respectfully dissent, because it seems to me that the objection of defendant's counsel, in the circumstances under which it was made, was sufficiently definite when he said, " * * * for the reason that there has been *no showing* that there was an intelligent *waiver* on the part of the defendant of his constitutional rights * * * " (Emphasis supplied).

All concerned understood this was in reference to the testimony which the detective was about to give to the jury as to defendant's self-incrimination. The Miranda opinion at 384 U.S. 476, 86 S.Ct. 1629 states, "The warnings required and the waiver necessary in accordance with our opinion today are, in the absence of a fully effective equivalent, prerequisites to the admissibility of any statement made by a defendant", and again at 384 U.S. 479, 86 S.Ct. 1630, "But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him." This opinion had been widely publicized and was in the advance sheets well in advance of the trial of the present case.

It seems to me it was clear defendant was objecting there was no waiver shown of his right against self-incrimination, as in fact there was not. The point was also set forth in the motion for new trial and carried forward in the brief.

Also, our rule 27.26(b) (3) on post-conviction remedy provides that " * * * trial errors affecting constitutional rights may be raised even though the error could have been raised on appeal." Defendant is claiming violation of a constitutional right and it appears to me that we will save considerable time, expense and effort for all involved if we handle the question on its merits now, State v. Beasley (Mo.Sup.) 404 S.W.2d 689, 690; State v. Reynolds, Mo., 422 S.W.2d 278.

For these reasons I would reverse and remand.