STATE of Missouri, Respondent,

v.

Roy Lee ENGBERG, alias Walter Johnson, Appellant.

No. 50186.

Supreme Court of Missouri,

Division No. 2.

March 9, 1964.

Motion for Rehearing or to Transfer to Court En Banc Denied April 13, 1964.

Dale Beal, Kansas City, for appellant.

Thomas F. Eagleton, Atty. Gen., Jefferson City, Clarence Bradley Mitchell, Sp. Asst. Atty. Gen., Kansas City, for respondent.

STORCKMAN, Presiding Judge.

This is an appeal from a conviction of robbery in the first degree. The court found that the defendant had been convicted of a prior felony and assessed punishment at twenty years in the penitentiary. The defendant's motion for new trial was overruled and he was sentenced in accordance with the punishment assessed. The defendant was ably represented in the trial court by appointed counsel, Mr. Dale Beal, who also briefed the appeal in this court.

The evidence favorable to the verdict tends to prove that on June 7, 1962, at about 1 a. m., two men, who were later identified as the defendant and Jack Lamphere, entered the Club Bar located at 11 East 31st Street in Kansas City as the bartender Albert Grotzinger, alone in the Club, was sweeping the floor preparing to go home. The defendant stuck a gun into Mr. Grotzinger's ribs and required him to open the cash register. The defendant and Lamphere took the cash, two electric razors, and two fifths of Jim Beam whiskey. The robbers then put the bartender in a rest room and braced the door shut with a chair. The bartender forced the door open and called the police. At the trial he positively identified the defendant as the robber who held the gun against him.

Lamphere and two women companions, Joanna Wallace and Charlotte Martin, were arrested the following day in Kansas City. The defendant was captured in Denver, Colorado, and returned to Kansas City on June 29, 1962. The defendant admitted to the officer who brought him back from Denver that he had registered at a certain motel in Kansas City under the name of Walter Johnson. He was accompanied by Lamphere and the two women. He also identified the registration card as filled out and signed by him. Mrs. Wallace testified that she and Charlotte Martin waited outside in an automobile while the defendant and Lamphere entered the Club Bar. When the men returned, the defendant had a revolver in his belt and got into the front seat with the two women. Charlotte Martin drove the automobile. Lamphere got into the rear seat and crouched out of sight on the floorboards of the automobile as they drove away. The defendant did not testify, but put on a police officer who testified regarding the robbery report and statement given the police by the bartender. Other matters will be referred to in connection with the questions presented.

The original information was filed on July 6, 1962, and on July 9, 1962, another attorney was appointed to represent the defendant, but the record does not show when or how he got out of the case. Present counsel was appointed on February 28, 1963, and on April 4, 1963, he filed a motion for a ninety-day continuance which the court overruled. In general, the grounds were that unfavorable newspaper publicity had made it impossible for the defendant to obtain a fair and impartial jury for the trial of the case, that defendant's counsel had been notified on March 21, 1963, that five additional witnesses would be endorsed on the information by the state, that defendant's counsel did not know definitely until April 1 that this case would be tried before another one on the docket, that the state intended to amend the information so as to proceed under the Habitual Criminal Act, that counsel for the defendant being en-

gaged chiefly in civil practice did not have sufficient time to prepare the criminal case for trial, and that he had been unable to contact some of the the witnesses endorsed on the information although he had made a diligent effort to do so.

■ An application for a continuance in a criminal case is addressed to the sound discretion of the trial court and the appellate court will not interfere unless it clearly appears that such discretion has been abused. State v. Scott, Mo., 338 S.W.2d 873, 876 [4]; State v. Le Beau, Mo., 306 S.W.2d 482, 486 [5]. The defendant offered in evidence about 29 clippings from Kansas City newspapers dealing with this and other offenses with which the defendant had been charged. Most of the articles had been published in June and July 1962, which was about ten months prior to the trial.

■ What constitutes unusual or extraordinary circumstances sufficient to entitle the accused to a continuance on the ground of excitement and prejudice against the accused is ordinarily a question addressed to the sound discretion of the trial court. State v. Golden, 353 Mo. 585, 183 S.W.2d 109, 111–113 [2]. See also 68 A.L.R.2d 540. Any doubt about the trial court's ruling is dissipated by the record of the examination of the jury panel on voir dire. The court excused veniremen about whom there was the slightest doubt, and no difficulty was encountered in selecting a qualified jury.

■ The prosecutor in a criminal case should not delay unnecessarily in endorsing the names of witnesses on the information or in offering an amended information for filing, but the trial court has a wide discretion in determining whether the prosecutor has done so and has thereby put the defendant to a disadvantage and deprived him of a fair trial. State v. Thost, Mo., 328 S.W.2d 36, 38 [4].

■ The traditional duty of members of the bar to accept appointment to represent indigent defendants in criminal cases re-

quires mutual cooperation between the court and counsel. The record does not show any abuse of this practice or that the rights of the defendant were prejudiced. The defendant was effectively represented by his court-appointed counsel. The court did not err in refusing to sustain the motion for a continuance. State v. Messino, 325 Mo. 743, 30 S.W.2d 750, 758 [8]; State v. Bockman, Mo., 251 S.W.2d 607, 608 [4].

The defendant prior to trial filed a motion to suppress articles held as evidence consisting of two bottles of Jim Beam whiskey and two electric razors which were found in the motel room where the defendant had registered as Walter Johnson. No evidence was offered when the motion was heard and it was overruled. At the trial the whiskey and razors were identified as articles taken in the robbery of the Club Bar. Before they were offered, the defendant in chambers again objected to their admission in evidence and was again overruled. The ground of objection was that their seizure was in violation of defendant's constitutional rights under Art. 1, § 15, of the Missouri Constitution, V.A.M.S., and Amendment IV of the United States Constitution, in that the articles were not taken from the person of the defendant but from others who relinquished them because of fear and not voluntarily; that they were not obtained as an incident of a lawful arrest and were not in plain sight but searched for and seized without a valid search warrant. The state's evidence showed that the defendant and his companions arrived at the motel on June 6 and the rent was paid through 7. When police officers went to the motel on June 8, Mrs. Joanna Wallace was the only person present and she was arrested. The defendant and his other companions, Jack Lamphere and Charlotte Martin, never returned to the motel.

■ The evidence is uncontradicted that the articles sought to be suppressed were found on a dresser top in plain view and were not located by means of a search. See State v. Reagan, Mo., 328 S.W.2d 26, 28

[3]. There is no evidence that anyone was put in fear or coerced by the seizure. The defendant was in flight at the time and there is no showing or contention that the motel room was his abode when the police took possession of the articles. The officers entered the room where the articles were found by means of a key obtained from the person in charge of the motel. It is not contended that the arrest of Mrs. Wallace in connection with the robbery was unlawful. The police officers were on the premises lawfully and had the right to take possession of articles in the motel room which had an evidentiary value. State v. Redding, Mo., 357 S.W.2d 103, 107 [5]; State v. Brookshire, Mo., 353 S.W.2d 681, 684–685 [9]. The fact that the officers did not take possession of the articles at once and tag them as evidence is of no consequence; they were immediately observable and were not discovered by means of a later search. The police simply waited around to see if the defendant would return which he did not.

■ The guaranty against unreasonable search and seizure is a personal one and, since it appears that the defendant had no possessory rights either in the premises or the personal property at the time the articles were taken by the police officers, the seizure was not unlawful. State v. Cantrell, Mo., 310 S.W.2d 866, 870 [9]; State v. Green, Mo., 292 S.W.2d 283, 286 [1]; State v. Egan, Mo.App., 272 S.W.2d 719, 724 [6]; State v. Carenza, 357 Mo. 1172, 212 S.W.2d 743, 745 [3]. There is no basis for the claim that the defendant's constitutional rights were violated and the court did not err in overruling the motion to suppress and admitting the articles in evidence.

The defendant's motion for inspection under S.Ct. Rule 25.19, V.A.M.R., of documents and papers in the possession of the police department and the prosecuting attorney's office, filed prior to trial, was also overruled. The request was "to permit the defendant to inspect and copy all of the books, papers and documents of the

Police Department of Kansas City, Missouri, and papers retained by the Prosecuting Attorney's office pertaining to the robbery of the Club Bar, 11 East 31st Street, Kansas City, Jackson County, Missouri, involving one Albert P. Grotzinger, and especially the offense report of June 7, 1962, statement of Albert P. Grotzinger, and any and all records or statements pertaining to said robbery for the reason that they are necessary and contain conflicting information which is vital to the defense of this defendant." The motion alleged that the defendant was without funds to take depositions and that inspection should be allowed as in civil cases to obtain information that "might lead to the discovery of material evidence".

■ Rule 25.19 authorizing the issuance of a subpoena duces tecum for the production of books, papers, documents or .other objects is not a rule of discovery; its purpose is to enforce the production of documents or objects at the trial which contain evidence material and relevant to the issues, and the court may direct the production and inspection of the designated documents or objects before the court prior to trial or their being offered in evidence if by doing so the trial of the case will be expedited. State ex rel. Phelps v. McQueen, Mo., 296 S.W.2d 85, 89 [1]; State v. Kelton, Mo., 299 S.W.2d 493, 497 [10]. Except for the assertion that the application is made pursuant to Rule 25.19, the motion bears little resemblance to what is contemplated by the rule.

■ Regardless of how the motion is treated, it could not be effective as to any documents other than the offense report and the statement of Mr. Grotzinger, and these were produced at the trial by a police officer pursuant to a subpoena by the defendant. The state made no objection to testimony of the witness regarding the contents of these documents. On this record it appears that the defendant could not have been prejudiced by the ruling.

In the absence of the issuance of a subpoena duces tecum under Rule 25.19 and a showing that the documents designated therein contained material evidence and that the trial of the case would be expedited by the production and inspection of the documents before trial, the court did not err in overruling the defendant's motion for inspection. State v. Redding, Mo., 357 S.W.2d 103, 109 [17].

■ The defendant's final contention is that the court erred in refusing to provide the defendant with a converse robbery instruction and in refusing to give and read to the jury converse instructions 6–A and 6–B offered by the defendant. By its very nature, a converse instruction is not a part of the law of the case on which the court must instruct whether requested or not. Hence, if a defendant wants a converse instruction given, he must formulate and offer a proper one. State v. Boyd, 354 Mo. 1172, 193 S.W.2d 596, 597 [1].

The dissenting opinion in Boyd, 193 S.W.2d 598, 601, reviews the somewhat erratic history of converse instructions in criminal cases. Nevertheless, the rule now seems established that a defendant is ordinarily entitled to have given a correct instruction submitting the converse of the state's main instruction; but, if the given instructions fully and fairly cover the same subject matter contained in defendant's converse instruction, it is not prejudicial error to refuse the instruction offered. State v. Taylor, 356 Mo. 1216, 205 S.W. 2d 734, 737 [8]; State v. Boyd, 354 Mo. 1172, 193 S.W.2d 596, 597 [1]; State v. Chevlin, Mo., 284 S.W.2d 563, 567 [11]; State v. McWilliams, Mo., 331 S.W.2d 610, 613 [6].

In State v. Boyd, an opinion by the court en banc, and in State v. Taylor, given instructions fully and fairly covered the subject . matter and the refusal of converse instructions was held not to be reversible error. In State v. Chevlin, the refusal to

give defendant's requested converse instruction "based on appellant's theory of the case" was held to be reversible error. In State v. McWilliams, the converse instruction offered covered the element of intent to cheat or defraud. The opinion states that the "instructions given by the court may have abstractly covered the subject of the intent but the defendant was entitled to a factual, affirmative converse" hypothesis not found in the instruction given, and the judgment was reversed on that ground. 331 S.W.2d 613 [7].

Given instruction 2 covered the essential elements of the state's case and concluded "if such be your finding, then you will find the defendant guilty of Robbery, First Degree, and so find in your verdict. And, unless you find the facts to be as above stated, you are instructed to acquit the defendant of Robbery, First Degree." Given instruction 3 told the jury that the defendant was entitled to an acquittal unless the evidence in the case taken as a whole satisfied the jury of defendant's guilt beyond a reasonable doubt and that if they had a reasonable doubt as to the defendant's guilt they should acquit him.

Refused instruction 6–A in substance told the jury that they must find from the evidence beyond a reasonable doubt "that the money and goods, or either, alleged in the information to have been taken by defendant, were the property of Albert P. Grotzinger or under his supervision or control to hold or protect for another" and unless they so found, the jury must return a verdict of not guilty. Instruction 6–B told the jury that they must acquit the defendant unless they found the facts to be as set out in the instruction.

 This is not a case in which the defendant put forward a theory of de-

fense and asked for an instruction in keeping with it as in Chevlin and McWilliams. The defendant's defense was solely an attack upon the credibility of the state's case. No issue was presented or a theory developed by the evidence as to the ownership of the stolen property contrary to the state's evidence. Refused instruction 6–A referred to the information rather than the evidence for a description of the property taken. Also it tended to be misleading and confusing in that it dealt solely with title to the stolen property and introduced elements of Mr. Grotzinger's "supervision or control to hold or protect" the property "for another" which went beyond the narrow confines of the evidence in this regard. For these reasons it was not error to refuse the instruction.

Instruction 6–B directed the jury to acquit the defendant unless it found facts which were practically a restatement of the facts recited in given instruction 2. The facts were not conversely stated and the direction added nothing to those given in instructions 2 and 3. Under the authority of Boyd and the other cases above cited, it was not prejudicial error to refuse instruction 6–B.

We have considered all of the specifications of error presented for review and find them to be without merit. The defendant was present and represented throughout the trial including his allocution and sentencing. The court and counsel extended themselves in affording the defendant a fair trial.

We have examined the parts of the record and entries designated in S.Ct. Rules 28.02 and 28.08 and find them to be in proper form and free from error. Accordingly the judgment is affirmed.

All of the Judges concur.