STATE of Missouri, Respondent,

v.

Alvin CALDWELL, Appellant.

No. 53105.

Supreme Court of Missouri, Division No. 2.

Feb. 12, 1968.

Norman H. Anderson, Atty. Gen., Jefferson City, Sidney Fortus, Special Asst. Atty. Gen., Clayton, for respondent.

J. Whitfield Moody, The Legal Aid and Defender Society of Greater Kansas City, Kansas Ctiy, for appellant.

EAGER Judge.

Defendant was convicted by a jury of assault with intent to kill, with a deadly weapon, and with malice aforethought. Upon allegations and findings of a previous conviction, sentence and imprisonment for a felony he was sentenced to a term of seven years. Defendant was represented at the trial by employed counsel who filed a motion for new trial; this appeal was taken promptly when that motion was overruled. He is represented upon this appeal by the Public Defender of Jackson County, by appointment.

Since only one question is raised in defendant's brief, we need not relate all factual details; however, the jury could have believed all of the following facts from the evidence produced. One William Broussard and his friend Leon Wyatt, both regularly employed, stopped .in a tavern

known as the Miami Bar at 27th Street and Troost Avenue in Kansas City, between 6:00 and 7:00 p. m. on May 7, 1966. Each ordered a glass of beer; Broussard sat at the bar while Wyatt went to watch a pool game a little farther back. While Broussard was sitting at the bar a woman, whom he did not know, brushed against him, merely in passing. At about that time three men had entered the place, and one (specifically identified as this defendant, whom Broussard had never seen before) started a very loud argument with Broussard, insisting that the woman "was somebody's old lady," and that "I am trying to put you onto the facts," with some repetition and considerable name-calling; Broussard replied that he had a wife and was "not interested in anybody's old lady" and to "forget it." Hearing the argument, Wyatt came back and persuaded Broussard to leave; he did leave and walked to his car parked on a small lot about half a block (or less) north on the west side of Troost. Wyatt remained a very short time to see if he could placate the other party or parties. Broussard got into his car and started it, then got out and walked back to the sidewalk to wait for Wyatt. He soon saw the defendant and a small group of men coming towards him from the tavern; defendant was holding an open knife with a blade of approximately six inches, which Broussard saw from approximately 25 feet; defendant called Broussard a vile name, said he was "going to get him," and ran up to him. Broussard circled around and tried to fend off the knife with his hands and arms, getting a few minor cuts in the process, but he finally stumbled and fell between two parked cars. While he was thus lying on the ground, defendant stabbed him in the back and pierced a lung; he then remained "astraddle" of him for a short time. Various people were around this scene, but no one interfered. Broussard tried to kick the defendant, but with no effectiveness. Finally, one of defendant's companions said "Well, you got him, Joe, so let's go." Thereupon they departed, in some haste, and with no hindrance. Wyatt got his friend across the street to a bowling alley where he collapsed. The police and an ambulance were called; Broussard was in the hospital for several days.

Wyatt had followed defendant and his companions from the tavern and saw these occurrences. Both Broussard and Wyatt positively identified defendant at the trial as the man who stabbed Broussard, and the testimony further showed: that Broussard had first identified defendant from a police picture (there being no objection to this evidence) and later in a lineup; that Wyatt had identified him in a police lineup. Broussard first learned defendant's name after these things had occurred. Wyatt confirmed all the substance of Broussard's testimony. All of the persons directly concerned were colored. Broussard and Wyatt were most extensively cross-examined concerning the identity and appearance of the aggressor, perhaps to the point of tediousness. At one point, when Wyatt was asked why this affair made such an "imprint," he said: "Because the man had a knife and was trying to kill another man."

On behalf of defendant, three witnesses (two male, one female) testified. Two of these were in the "Barclay Cafe" outside of which the stabbing occurred; while "goofing around," as one of these witnesses said, they heard and saw a commotion outside so they went out. The woman testified that she saw the man stabbed, but that the person who did it was not this defendant. The other, her male associate, testified that he saw the man with the knife, fighting, and that it was not this defendant. Both of these had known the defendant previously. The third witness, who had just been standing on the sidewalk in front of the cafe, ran closer to see the fight. He testified: that he had seen the aggressor around the neighborhood previously; that he knew the defendant, having spent some "time" with him at the Municipal Farm. He inferred that the man who stabbed Broussard was not this defendant. The defendant did not testify.

The Court gave the usual instructions on the presumption of innocence and credibility; it also gave one on alibi, to which no objection is made here. It gave two verdict-directing instructions, No. 3 and No. 4; the first submitted defendant's guilt of an assault with malice; the other, his guilt of an assault without malice. We need not consider the latter, since defendant was not found guilty under it and the defendant complains here only of Instruction No. 3. Such is his sole point of error. We quote the pertinent parts of Instruction No. 3 omitting definitions of which no complaint is made: "The Court instructs the jury that if you believe and find from the evidence in this case, beyond a reasonable doubt, that at the County of Jackson and State of Missouri, on the 7th day of May, 1966, the defendant herein, ALVIN CALDWELL, did then and there unlawfully, wilfully and feloniously make an assault upon one William Broussard with a dangerous and deadly weapon, to-wit: a knife likely to produce death or great bodily harm, with felonious intent, and on purpose with Malice Aforethought to kill or do great bodily harm to the said William Broussard, if such be your finding, then you will find the defendant guilty of Assault with Intent to Kill with a knife with Malice Aforethought and so find in your verdict.

"And, unless you find the facts to be as above stated, you are instructed to acquit the defendant of Assault with Intent to Kill with a knife with Malice Aforethought."

The arguments made in support of this appeal, insofar as we understand them, are: that the supposed facts supporting guilt were affirmatively stated in the instruction, whereas the theory of defendant's innocence was stated negatively in the "unless" clause; that this tended to assume, or to give the jury the idea, that the affirmative recitals were "actual occurrences," particularly since they were referred to as "facts"; and that the jury should have been instructed that there was a difference between "fact and evidence." Counsel thus conclude that the "unless"

clause here was a "positive misdirection," and that the words therein implied a "lesser obligation" than did the hypothesis of the first paragraph. It is a little difficult for us to follow this argument.

Three cases are cited, namely: Rosebraugh v. State Social Security Commission, Mo.App., 196 S.W.2d 27; Krisman v. Unemployment Compensation Commission, 351 Mo. 18, 171 S.W.2d 575; McCrabb v. Moulton, 8 Cir., 124 F.2d 689. The first two concern the use of the word "unless" in statutes regulating appeals, as there applied to Social Security and Unemployment Compensation cases. These would be more confusing than enlightening if we attempted to apply the discussions to our facts. In McCrabb, the Court was considering a contract for the purchase of oil leases; this contained a provision that the buyer would reassign the leases "unless" on or before a stated date he began the actual drilling of a well, with certain further conditions. The Court held: that the contract merely gave the buyer an option to drill or reassign, and that it created no affirmative obligation to drill; that the suit was one for the breach of a contract to drill, and not for a breach of the agreement to reassign; that, moreover, the contract contained a further provision rendering it void for failure to drill by a certain date, that this provision was self-executing, and hence, there could be no damages. That decision in nowise conflicts with the ordinary meaning of the word "unless," as we see it, and there is no occasion here to get into an exercise in semantics. The case is apparently cited as holding that the word "unless" imposes no obligation, but merely an option; but even on the facts of that case the conclusion does not follow generally, for the buyer would have been obligated to *reassign* the leases, had it not been for the nullifying provision.

 We shall proceed to consider the use of similar provisions in Missouri in criminal instructions, which is more to the point. It is, of course, customary and

proper that the Court should hypothesize for the jury those factual elements which constitute the crime charged. In State v. Adamson, Mo., 346 S.W.2d 85, this Court said at loc. cit. 89: "As we view the instruction, the court merely hypothesized the facts which were essential to a finding of guilt, as taken from the actual evidence, and applied the recognized law thereto. There was nothing unusual or improper about this; * * *." See also: State v. Shaw, Mo., 357 S.W.2d 894; State v. Barr, 340 Mo. 738, 102 S.W.2d 629; State v. Stark, Mo., 249 S.W. 57. In fact, there is no other way in which the Court may properly instruct the jury as to the application of the law to a given set of facts. The "unless you so find" clause has frequently been used as a converse, given to protect the defendant. State v. Nasello, 325 Mo. 442, 30 S.W. 2d 132, 141; State v. Messino, 325 Mo. 743, 30 S.W.2d 750, 762. In those cases the clause was recognized as a converse; in Messino it was recognized as sufficient to justify the refusal of defendant's proffered converse instructions. Later, in State v. Fraley, 342 Mo. 442, 116 S.W.2d 17, the Court held that the use of that clause at the end of the State's verdict-directing instruction did not, in and of itself, justify the refusal of a correct, express converse instruction *when offered by defendant.* That opinion in nowise sought to impair the correctness of an instruction of the State hypothesizing the constitutive facts of the crime and containing the "unless" clause. And such instruction was considered as entirely sufficient where no correct converse instruction was offered by the defendant. The subsequent cases have not changed this rule. State v. Bradley, 361 Mo. 267, 234 S.W.2d 556; State v. Niehoff, Mo., 395 S.W.2d 174; State v. Engberg, Mo., 377 S.W.2d 282. In both Niehoff and Engberg, verdict-directing instructions containing the "unless" clause were given. In State v. Barr, 340 Mo. 738, 102 S.W.2d 629, it was held that such an instruction did not assume the facts hypothesized but required "the jury so to find."

■ No converse instruction whatever was offered by defendant in this case. We hold: that Instruction No. 3 did not assume any facts to be true; that the clause reading "unless you find the facts to be as above stated you are instructed to acquit * * *" not only did not subordinate defendant's theory of innocence, but gave to defendant a gratuitous converse, when he had not even requested one. The very wording of the instruction does distinguish between "evidence" and "facts"; it refers to a finding *"from the evidence";* it tells the jury that "unless *you find* the facts to be as above stated," you will acquit; and in the first paragraph there is the added caution, *"if such be your finding."* In the absence of the offer of an express converse (which it was *not* the court's duty to prepare and give,—Engberg, supra) there was no other way in which the issues could be submitted properly.

This is not a case where defendant advanced a specific theory of defense and asked an instruction "in keeping with it." Engberg, supra. The defense here was an attack upon the "credibility of the state's case." id. Defendant was given the full benefit of the presumption of innocence and of reasonable doubt, as noted in Niehoff and Engberg, supra. Under these circumstances, there was no error whatever in Instruction No. 3, as given. We appreciate the diligence of appointed counsel in pursuing the point, but, finding it of no substance, it is denied.

■ The amended information and the verdict are sufficient; we find, however, that the allocution, judgment and sentence do not conform to the actual charge upon which the defendant was convicted. The entry of record recites: "Now said defendant being informed by the court of the verdict of the jury, heretofore returned herein, finding him guilty of Assault with Intent to Kill with a Deadly Weapon, under the Habitual Criminal Act, and the court fixing the punishment at seven (7) years, to be confined at the direction of

the Reception and Diagnostic Center, Department of Corrections, Jefferson City, Missouri, for said offense of Assault with Intent to Kill with a Deadly Weapon under the Habitual Criminal Act." The remainder of the allocution and the sentence then followed. The defendant was actually convicted under § 559.180 RSMo 1959, which crime, of necessity, includes the element *"of malice aforethought."* All reference to that element, and consequently a complete reference to that particular crime has been omitted in the entry of the allocution, judgment and sentence. It is only because of that element that a sentence exceeding five years is proper. See, for comparison, § 559.190. We affirm the case on the merits, but we reverse the judgment and remand the cause with directions to the trial court to have the defendant brought before it for a proper allocution, judgment and sentence in accordance with the amended information and the verdict.

It is so ordered.

All of the Judges concur.