STATE ex rel. Joseph Franz ARBEITER, Relator,

v.

Honorable Franklin REAGAN, Judge of the Circuit Court of the City of St. Louis, Respondent.

No. 52923.

Supreme Court of Missouri, In Banc.

April 8, 1968.

Rehearing Denied May 13, 1968.

EAGER Judge.

This is an original proceeding in prohibition instituted in this Court. It seeks to prohibit the judge of the Assignment Division for Criminal Causes in the City of St. Louis from enforcing an order for a subpoena duces tecum and from disclosing the contents of certain juvenile court records to the Circuit Attorney. We issued our provisional rule, return was filed and the case has been argued and briefed here. There are no controversies as to essential facts.

Joseph Franz Arbeiter, 15 years of age, was arrested by the St. Louis police on Dec. 3, 1963, suspected of certain criminal offenses. He was questioned at some length by the police, and his statements indicated that he had killed a woman who had been stabbed very recently in her apartment by an intruder. After the interrogation, and around midnight on Dec. 3, the boy was turned over to the juvenile authorities. He was detained in its detention facilities until approximately Dec. 30, when the juvenile court entered an order certifying him to the criminal courts for trial under the general criminal law, and dismissed the petition filed in the juvenile court. He was then indicted for first degree murder, tried, convicted, and sentenced to imprisonment for life. Upon appeal, the judgment was reversed by this Court, solely upon the ground that his detention and interrogation by the police and the admission in evidence of his statements to the police were in violation of those provisions of the juvenile code which required that he be taken "immediately and directly before the juvenile court or delivered to the juvenile officer * * *." Section 211.061, RSMo 1959, V.A.M.S. (to which revision all statutory citations will refer). Further facts are shown in our prior opinion, which appears at State v. Arbeiter, 408 S.W.2d 26. Upon reversal, the case was remanded for another trial.

John H. Haley, Jr., John E. Bardgett, James T. Williamson, James P. Finnegan, Jr., St. Louis, for relator.

James S. Corcoran, Circuit Attorney for City of St. Louis, for respondent.

On Jan. 6, 1967, the Circuit Attorney filed a motion in respondent's (criminal)

court for the issuance of a subpoena duces tecum to the custodian of the records of the juvenile division for the production of any and all records of the juvenile; it was alleged in the motion that he had been certified to the criminal court for trial for murder and that the movant verily believed that he, Arbeiter, had made statements and admissions to the personnel of the juvenile division concerning the murder, which would be shown in the records; also, that such would be admissible in evidence. The prayer was for production, with permission to inspect and copy, except for those statements made at any formal hearing. The prayer also asked for the names and addresses of all personnel who had questioned the juvenile or witnessed any statements.

Appointed counsel for the defendant (who have at all times been most diligent and effective) filed objections to that motion which we need not detail, for substantially the same issues are discussed at length in their present briefs. On March 17, 1967, respondent, having previously held an evidentiary hearing, entered an order that the subpoena be issued returnable on April 5, 1967, and it then set the criminal case for trial on April 17, 1967. The present petition for prohibition was filed on March 28, 1967, which has suspended all further proceedings. At the hearing on Feb. 15, 1967, the principal testimony was that of a juvenile officer who had produced the records, and the testimony was, in substance, as follows: that he had brought with him the "social file" of this juvenile which contained their investigative reports, the police reports, correspondence, and a summary by a deputy juvenile officer; that these dealt generally with the type of person involved, with any need for psychiatric reports, and any "collateral" contacts with an outside agency; that the summary is regularly presented to the court at the time of hearing; that when a juvenile officer talks with a juvenile he usually makes notes which may be incorporated into the summary; that this file did not include

a record of any hearing before the juvenile judge, and that the "legal file" was kept in the clerk's office; that the chief purpose of assembling the present file was for presentation to the judge, for his use in the disposition of the matter; that, *until recently* (and in 1963) a juvenile was not advised that what he said might be used against him in a criminal action, nor of any constitutional rights, and that they felt that the juvenile should be "at ease"; that the juvenile was ordinarily told that what he said was for the purpose of the juvenile hearing; that at the hearings the entire file would be submitted to the judge, but there might also be oral testimony; that the file which he had produced was really the substantive file, the other being "legal papers"; that a transcript was taken at hearings only if counsel or the judge so directed, and that the present file contained none.

Following the order for the subpoena, the respondent notified the parties that he would on April 5, unless prohibited, open the juvenile records for inspection by the Circuit Attorney "in the preparation and prosecution" of the murder charge. We thus arrive at the point of controversy. We have omitted the legal contentions set out in the petition for the writ and those included in the return, for the same basic issues are raised in the briefs and will be discussed.

We shall first state the fundamental contentions of the parties. The relator asserts that the purpose and intent of the juvenile code (§§ 211.011–211.431) is that all files and records of that court are confidential and privileged, that the juvenile court retains jurisdiction thereof even after a juvenile is certified for trial under the general law, that the records are compiled in an atmosphere of confidential relationship, and that the production and disclosure of such records would be in violation of sundry constitutional rights of the juvenile (Federal and State), including due process, the prohibitions against self-incrimination, and the right to counsel. More or less inci-

dentally, he makes the point that the respondent has no authority to issue a subpoena duces tecum for these records because such is a "discovery process" and that there is no authority for this by statute or rule. The respondent answers: that he does have the power and authority to issue the subpoena and to disclose the contents of the records, first, because Rule 25.19, V.A.M.R. so permits, and, secondly, because the juvenile code contemplates that when that court dismisses its pending proceedings and transfers a juvenile for trial in the criminal courts under the criminal law, the juvenile has thus been relegated for all purposes to the operation of the general law and that the prior privilege of his records is no longer effective; or, in other words, that the juvenile court has the power to thus waive and *has waived* the privilege formerly attendant upon its files and records, and that its jurisdiction has entirely ceased.

We deal, first, with the more or less incidental contention that the Court has no power to issue a subpoena duces tecum under Rule 25.19 because it is not a rule of "discovery"; this consideration is entirely apart from the question of privilege. It is true that it has been said, rather broadly, in State v. Kelton, Mo., 299 S.W. 2d 493, and State v. Engberg, Mo., 377 S.W.2d 282, that this rule was not intended as a rule of discovery. In Engberg, the precise question was a ruling on a motion seeking a blanket inspection of all papers in the possession of the police and the prosecuting attorney. The motion there was not within the stated purpose of the rule. The Court there said, however, referring to the rule at loc. cit. 286: "* * * the court may direct the production and inspection of the designated documents or objects before the court prior to trial or their being offered in evidence if by doing so the trial of the case will be expedited. State ex rel. Phelps v. McQueen, Mo., 296 S.W.2d 85, 89[1]; State v. Kelton, Mo., 299 S.W.2d 493, 497 [10]."

In State ex rel. Phelps v. McQueen, Mo., 296 S.W.2d 85, at loc. cit. 89, the Court said: "We hold that our Rule 25.19 is not intended as a rule of discovery. Rather, its purpose is to enforce production of documents or objects at the trial that contain evidence material and relevant to the issues *and to require prior production and inspection of such records or objects if prior production and inspection will expedite the trial."* (Italics ours.)

The wording of the rule itself is, in pertinent part, as follows: "The court may direct that books, papers, documents or objects designated in the subpoena be produced before the court at a time prior to the trial or prior to the time when they are to be offered in evidence and may upon their production permit the books, papers, documents or objects or portions thereof to be inspected by the parties and their attorneys." We need not indulge in an exercise in semantics concerning the meaning of "discovery." The intent of this rule should not be limited too narrowly when we consider that there is no broad system of discovery in criminal cases in Missouri. Rule 25.19 plainly says that in issuing a subpoena duces tecum the Court may order the papers or objects produced prior to the trial and may permit them to be inspected by the parties and their attorneys. The production of these files and records and the consideration of the questions arising therefrom *during* the trial could only cause confusion and delay. Rule 25.19 does not permit unlimited discovery, nor should it be construed to do so. It is doubtful, to say the least, whether the subpoena duces tecum issued here constitutes "discovery," but we need not quibble over that. Under the very terms of the rule the respondent had the general power to issue the subpoena and require the production of the records before it prior to the trial.

Counsel for relator has briefed at length not only the right of respondent to disclose the contents of the records to the circuit attorney, but the *admissibility* at the trial of

any statements made by the juvenile to personnel of the juvenile court. We do not propose to rule the latter question in this proceeding, for it is not involved.

■ Relator's essential position is that the juvenile code, considered in its entire context, places a shroud of confidentiality over all relations and communications between the juvenile and all juvenile court personnel, and that this status attaches to all files and records and continues indefinitely (and probably permanently) even after a juvenile is transferred to the criminal courts for trial; this, with the exception of "peace officers' records" to be referred to later. Counsel argue that, as indicated by the evidence here, the juvenile is encouraged to be "at ease," to talk only for the benefit of the juvenile authorities and court, and that he was not (in 1963) advised of any of the constitutional rights legally attendant upon the interrogation of an adult. Further, counsel say that since Arbeiter's constitutional protections were thus more or less traded for the confidential status inherent in the proceedings, those rights would be impaired if the court now violates the confidence; and also that in such event much of the juvenile code may be unconstitutional. We shall not pursue these latter intricate problems, for they will become material only if and when evidence from the juvenile files is offered in evidence at the trial. The rights of juveniles, including those of due process, the right against self-incrimination, and equal protection, have been extensively treated in the cases cited by relator, including Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84; Application of Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527; Harling v. United States, 111 U.S.App.D.C. 174, 295 F.2d 161; Edwards v. United States, 117 U.S.App. D.C. 383, 330 F.2d 849. Kent, involved the validity of an order transferring a juvenile for trial in the criminal courts, and the basic constitutional requirements for the making of such an order; Harling, involved the admissibility of prior statements of a juvenile at his criminal trial; Edwards, involved the admissibility of evidence gathered as the result of a confession of the juvenile; Gault, dealt at great length with the steps constitutionally necessary to the making of a valid order committing a juvenile to a training school because of delinquency, with some discussion as to the general admissibility of the juvenile's statements. None of these cases touched upon our present problem. One may readily see from an examination of these opinions that the substitution of the "parens patriae" relationship (criticized in Gault, supra) of the juvenile authorities for the right of the juvenile to constitutional protections, has been considerably shaken; however, juvenile proceedings are not criminal proceedings. State ex rel. Matacia v. Buckner, 300 Mo. 359, 254 S.W. 179; State ex rel. Shartel v. Trimble, 333 Mo. 888, 63 S.W.2d 37; and the juvenile court need not, as yet, proceed with all the formalities of a criminal court; Kent, supra. We forego further discussion of this subject here; those principles will require careful study if and when any statements of Arbeiter are offered in his criminal trial, or perchance considered in pretrial proceedings.

Counsel for relator rely particularly upon §§ 211.271 and 211.321 in support of their contentions that there should be no disclosure. Insofar as material here, § 211.271 is as follows: "2. No child shall be charged with a crime or convicted unless the case is transferred to a court of general jurisdiction as provided in sections 211.011 to 211.431. 3. Evidence given in cases under sections 211.011 to 211.431 is not lawful or proper evidence against the child for any purpose whatever in a civil, criminal or other proceeding except in subsequent cases under sections 211.011 to 211.431." Section 211.321 is in full as follows: "1. The proceedings of the juvenile court shall be entered in a book kept for that purpose and known as the juvenile records. These records as well as all information obtained and social records pre-

pared in the discharge of official duty for the court shall be open to inspection only by order of the court to persons having a legitimate interest therein.

"2. Peace officers' records, if any are kept, of children, shall be kept separate from the records of persons seventeen years of age or over and shall not be open to inspection or their contents disclosed, except by order of the court. This subsection does not apply to children who are transferred to courts of general jurisdiction as provided by section 211.071.

"3. During the month of January in each year, the court may make an order to destroy all social histories and information other than the official court file, pertaining to any person who has reached the age of twenty-one years."

By Section 211.031 the juvenile court is given jurisdiction when a child "is alleged to have violated a state law or municipal ordinance." Section 211.071 is, in its pertinent parts, as follows: "In the discretion of the judge of the juvenile court, when any petition under sections 211.011 to 211.431 alleges that a child of the age of fourteen years or older has committed an offense which would be a felony if committed by an adult, * * * the petition may be dismissed and such child or minor may be prosecuted under the general law, whenever the judge after receiving the report of the investigation required by sections 211.011 to 211.431 and hearing evidence finds that such child or minor is not a proper subject to be dealt with under the provisions of sections 211.011 to 211.431." No attack has been made here upon the proceedings by which Arbeiter was transferred to the criminal court.

The essential issue here is whether the order of the juvenile court relinquishing and transferring jurisdiction is legally the equivalent of an order of that court permitting the inspection of the records of the juvenile court by the parties in the criminal cause. Or to put the issue in slightly different form, it is whether there-

by the juvenile court transferred to the criminal court the right to open the records for inspection. If such was the effect, the contemplated procedure cannot be a violation of the statutes. It has been held, generally, that the jurisdiction of the juvenile court ceases upon the making of a transfer order. Ex parte Bass, Banc, 328 Mo. 195, 40 S.W.2d 457. The file that has been produced on subpoena is the "social" file, previously referred to. Counsel for relator make the point that § 211.-321(1) treats the social records differently from the "Peace officers' records," § 211.-321(2) in that the latter are subject to inspection upon transfer without an order of the juvenile court, whereas the former may only be inspected by an order of the Court. Counsel further suggest that the file in question was a part of the "evidence given" before the juvenile judge and, therefore, inadmissible under the express terms of § 211.271. As already suggested, we have not yet reached the question of the *admissibility* of any evidence. It has been ruled in several Missouri cases that proceedings held in a juvenile court and the disposition of a juvenile therein, may not be shown later in evidence by way of impeachment, when the juvenile is a witness. State v. Coffman, 360 Mo. 782, 230 S.W.2d 761; State v. Tolias, Mo., 326 S.W. 2d 329, 333; State v. Cox, Mo., 263 S.W. 215. That theory has been criticized. 3 Wigmore on Evidence 3rd Ed., § 1041, but in any event that is not the issue here. Generally speaking,—"The object of the waiver decision is to weed out those children who cannot benefit from juvenile court treatment." 79 Harvard Law Rev., p. 793, and see also State v. Van Buren, 29 N.J. 548, 150 A.2d 649.

We may and do assume that after the transfer of jurisdiction, the Circuit Attorney is one "having a legitimate interest" in the juvenile records; their contents could have been released expressly to him upon order of the juvenile court at the time of transfer, or before or after that time. We are cited to no case, in Missouri or

elsewhere, which rules our precise question. The writer has examined texts, annotations, and law review articles in an independent research and has found nothing directly in point. We are thus relegated to a consideration of general principles and a construction of our statutes. We deem it unnecessary to discuss in any detail the broad purposes of the juvenile laws. One object is to effect, if possible, rehabilitation instead of punishment; another is to protect the juvenile from the stigma which would attach to his prosecution as a lawbreaker in the criminal or municipal courts. We are told, however, that in practice juvenile records are widely circulated to law enforcement officers, social agencies, the FBI and even to prospective employers. Harvard Law Rev., supra. loc. cit. 800; 67 Columbia Law Rev. 286–287; and see particularly the discussion in Application of Gault, 387 U.S. 1, 87 S.Ct. 1428, at loc cit. 1442, 18 L.Ed.2d 527, where the Court said that the claim of secrecy "is more rhetoric than reality." In the present case no possible *secrecy* remains. Arbeiter has been tried once for murder in the criminal court, with the attendant publicity; he has been convicted and given a life sentence and his conviction has been reversed on appeal and the cause remanded. The case is reported in the Southwestern Reporter. At the trial his various incriminating statements to the police were disclosed in evidence, although the case was reversed for that reason. As a practical matter, the only possible objective of the relator in seeking to maintain now the supposed secrecy of his juvenile files, is to prevent the *use* of any admissions or incriminating statements which the juvenile may have made. There may be such in the files and there may not; there may also be other information material and vital to the prosecution and wholly unrelated to any such statements. The juvenile court has not declined to open the files to the Circuit Attorney, for it is not shown that any such application was made.

■ The ultimate purpose of the transfer of a juvenile, such as was made here, is to protect the *public* in those cases where rehabilitation appears impossible. In State v. Van Buren, supra, the Court said, at 150 A.2d loc. cit. 654: "Thus a case may be referred to the prosecutor when the circumstances indicate that, if the charge is ultimately established, society would be better served by the criminal process by reason of the greater security which may be achieved or the deterring effect which that process is thought to accomplish." The seriousness of such matters to the public, as well as to the juvenile, is well illustrated in the following language contained in the separate opinion of Mr. Justice Harlan in Application of Gault, 387 U.S. 1, 87 S.Ct. 1428, at loc. cit. 1465–1466, 18 L.Ed.2d 527: "No more evidence of the importance of the public interests at stake here is required than that furnished by the opinion of the Court; it indicates that 'some 601,000 children under 18, or 2% of all children between 10 and 17, came before juvenile courts' in 1965, and that 'about one-fifth of all arrests for serious crimes' in 1965 were of juveniles. The Court adds that the rate of juvenile crime is steadily rising. All this, as the Court suggests, indicates the importance of these due process issues, but it mirrors no less vividly that state authorities are confronted by formidable and immediate problems involving the most fundamental social values." In a few states original jurisdiction of juveniles between certain ages is vested initially in the criminal court which may then, in its discretion, transfer the person to the juvenile court or retain jurisdiction. 67 Columbia Law Rev., loc. cit. 311–312. In Illinois, the power of transfer is vested initially in the prosecuting attorney. Illinois Ann.Stat., Ch. 37, §§ 702–7(3).

■ It is our conclusion that when the juvenile court relinquished its jurisdiction over this juvenile and transferred all further proceedings to the criminal court (i. e., respondent, for our purposes) it thereby vested the latter court with the

power and authority to open the juvenile files and records for inspection by "persons having a legitimate interest therein," and that such "persons" certainly include the Circuit Attorney and relator's counsel. This ruling does no violence to the differing references in § 211.321(1) and (2) to juvenile records generally and to peace officers' records, for any and all may be inspected upon proper order; we hold that respondent may properly make the order. This is not to infer, however, that any such files and records are to be disseminated generally to other persons, and the limits of the inspection should be rigidly enforced. We hold that such disclosure is not contrary to the intent of our juvenile statutes, and further that no constitutional question is thereby involved. The "confidentiality" of such records is primarily a legislative matter and purely a matter of state concern. Nor is it necessary, in the present posture of this case, to pass upon the constitutionality of any part of our juvenile code.

We emphasize again that we do not rule, directly or indirectly, upon the admissibility of any admissions or statements which may conceivably be found in the juvenile records. There will be time for mature consideration of that question when and if any such material is offered. Counsel for relator has cited substantially all of the controlling cases, including Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84; Application of Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527; Haley v. State of Ohio, 332 U.S. 596, 68 S.Ct. 302, 92 L.Ed. 224; Gallegos v. State of Colorado, 370 U.S. 49, 82 S.Ct. 1209, 8 L.Ed.2d 325; Harling v. United States, 111 U.S.App.D.C. 174, 295 F.2d 161; Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

The provisional rule in prohibition is quashed and respondent is directed to proceed as indicated in this opinion.

HOLMAN, C. J., and STORCKMAN, J., concur.

FINCH, J., concurs in separate concurring opinion filed.

HENLEY and DONNELLY, JJ., concur and concur in separate concurring opinion of FINCH, J.

SEILER, J., dissents in separate dissenting opinion filed.

## CONCURRING OPINION

FINCH, Judge.

I have concluded to concur in the principal opinion herein. It does not hold that anything disclosed as a result of an examination of the juvenile court file is admissible and may be used against the defendant. That issue very carefully and explicitly is reserved until such time as there is an attempt to offer in evidence against defendant any of the information contained in said file or obtained as a result of inspection of that file.

To rule otherwise would be to conclude that § 211.271(3), RSMo 1959, V.A.M.S., creates an absolute privilege in favor of the juvenile with respect to juvenile court files in his case and with reference to any witnesses used against him in the juvenile court. This seems to be the contention of defendant and the philosophy expressed in the dissenting opinion herein.

I cannot agree that the statute creates such an absolute privilege. In the first place, the statute authorizes the juvenile court, by order, to open the file to interested persons. This, in and of itself, shows that the file is not absolutely privileged. Furthermore, although the statute says that evidence given in the juvenile proceedings is not lawful or proper evidence against the child for any purpose whatsoever, that does not necessarily mean, in my judgment, that the lips of one who testified in the juvenile proceeding are sealed so that he may not be a witness in a subsequent criminal proceeding.

Likewise, the statute does not necessarily mean that any statement given by the juvenile himself may not be used against him in a criminal proceeding. If, for example, a juvenile is given all of the constitutional rights required by Gault,* and he voluntarily and knowingly makes a confession, the fact that such information was used in the juvenile proceeding would not necessarily mean that evidence of such confession could not be offered in a criminal trial. Certainly, constitutional standards would have been complied with in such a situation.

The test in each case will be whether the particular evidence offered is or is not admissible, considering constitutional standards as well as the provisions of the Juvenile Code. These questions properly are left open under the majority opinion, to be determined in the light of the particular facts at that time presented.

### Dissenting Opinion

I respectfully dissent. It seems to me that the effect of the majority opinion is that the state can have its cake and eat it, too, which I do not think was the intention of the legislature in adopting the juvenile code. In this case, the state, through the juvenile court, *prior* to transfer of the juvenile, obtains information from him at a time when a non-adversary type of relationship exists between it and the juvenile, where the juvenile is being held in custody not as a criminal, but as a juvenile, primarily for purposes of reform and rehabilitation, if possible, rather than for punishment.[1] The statute, § 211.271, subd. 3, RSMo 1959, states "Evidence given in cases under [the juvenile code] is not lawful or proper evidence against the child *for any purpose whatever* in a civil, criminal or other proceeding  *  *  *"  (emphasis supplied). Relator offered to prove at the hearing before respondent that the attorney who was appointed to represent relator in juvenile court did not advise relator not to communicate or speak with the juvenile officers because the attorney was of the opinion that whatever was said by the juvenile to the juvenile officers could not be used against him in any other place. It now turns out that the prosecuting authorities are to be furnished this information to use against him. Entirely aside from the constitutional questions involved in using evidence obtained from the juvenile under these circumstances against him in a criminal prosecution, it seems to me that § 211.271, subd. 3, supra, gives the juvenile a substantive right not to have such evidence used against him "for any purpose whatever in a civil, criminal or other proceeding", and we cannot change the substantive law by our rule 25.19, see Art. V, § 5, 1945 Constitution.[2]

---

* Application of Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527.

1. The juvenile officer testified that the practice was never to advise the juvenile that whatever he said to the juvenile officer would be used against him in a criminal action; that "for us to be effective", it "would be a necessary thing, yes", for the juvenile to be at ease, to be able to communicate and give information to the juvenile officer; that "they were not advised of their constitutional rights" ; that the juvenile was ordinarily advised that what he says is for the purpose of the hearing at the juvenile court, not beyond that.

2. It is true the majority opinion carefully reserves the matter of the admissibility against relator at the trial of any statements made to the juvenile court. However, this gets into the trial practice field and depends upon the right objection being made by counsel at the right time, a matter which is not entirely in the control of the defendant, as illustrated by State v. Price, (Mo.Sup.) 422 S.W.2d 286, 289, where a valid ground existed, but was lost because of an insufficient objection. The statute does not say that the evidence cannot be used against the juvenile if proper objection is made to its use. It states flatly that such evidence is not "lawful" or "proper" against him in a criminal proceeding. If it is not lawful or proper evidence, it is difficult to see how it should be produced against him in the first place. Nor do I see anything in the portions of the juvenile code giving the juvenile court authority to open the records to

Also, we should consider the effect which the use we are permitting to be made of our court-made rule 25.19 will have on the work of the juvenile court in what has been described as "the specialized field of handling neglected and delinquent children in modern times" and what it will do to the techniques which have been worked out for handling juveniles.[3] Gone, it seems to me, will be the opportunity to establish in the juvenile a feeling of trust and confidence in the juvenile court authorities and a willingness by the juvenile based on this trust and confidence to make a full disclosure of the facts, especially when to do so may involve him in a crime or put him in a bad light. Anyone who has had any experience with children knows how important it is to corrective action to get at the truth and to have the confidence and respect of the child.[4] Henceforth, however, any adviser of a juvenile who knows of this decision—lawyer, minister, relative, teacher, friend, or whoever it may be—will advise a juvenile that no matter what assurances he receives from the juvenile authorities he cannot safely tell them the truth if it involves him in a criminal act, because it may well turn out that what he tells them will wind up in the hands of the prosecuting authorities "for the purpose of inspection, copying and for use in the preparation of trial" against him. This decision delivers a further blow to the rehabilitative aspect

of juvenile court work. It will keep juveniles from speaking freely. Admittedly the present case is a difficult one, because the record in the first trial, State v. Arbeiter (Mo.Sup.) 408 S.W.2d 26, shows that this particular defendant made outright statements of his guilt to the police and there is a natural reaction that he should not escape punishment if in fact he is guilty, but this does not change the juvenile code or its application.

Nor does it seem the fact mentioned in the majority opinion that it is public knowledge that this juvenile is involved in a murder charge and has made incriminating statements (which came about because of error in the first trial in admitting statements made to the police and corrected on appeal in State v. Arbeiter, supra) is material, because there is nothing in the opinion which limits its operation to cases where the aura of confidentiality surrounding juvenile matters has already been lost, or which will keep it from operating against future juveniles indiscriminately.

For the foregoing reasons I believe the provisional rule herein should be made absolute.

Turning now to the objection raised by relator that rule 25.19 is not to be used as a rule of discovery, the court has many times said categorically that the rule is not so to be used.[5] Here the entire purpose of

inspection "to persons having a legitimate interest therein" which diminishes the force of § 211.271, subd. 3. The majority opinion says the records could have been released to the circuit attorney either before or after transfer. Perhaps so, but it would seem a prosecuting attorney would be in conflicting positions if he were inspecting the records with a view to helping the court handle the juvenile as a juvenile, yet at the same time getting ready to use the records to prosecute him as an adult. See State v. Crockett (Mo.Sup.) 419 S.W.2d 22, 29.

3. "It was felt that confession and self-examination embodied important therapeutic values: 'the youth should be encouraged to speak openly both about him-

self and the offense'; 'in order to rehabilitate a child, he must first admit his crime and so be aware that he is in need of rehabilitation' * * *." 67 Columbia Law Review, supra, at 331. " * * * The rehabilitative devices of the adjudication stage—dismissal, continuance and qualification—are all predicated upon a youth's willingness to discuss freely his offense and social condition. * * *" Id. at 332.

4. Unquestionably the assurance heretofore provided by § 211.271, subd. 3 has been an important factor in getting the co-operation of the juvenile and his advisers.

5. State v. Blevins (Mo.Sup.) 421 S.W.2d 263, 268; State v. Spica (Mo.Sup.) 389 S.W.2d 35, 51; State v. Aubuchon (Mo.

the state is discovery. What the state is seeking here are statements or admissions of the relator, if any, and the names of juvenile personnel who took or witnessed such statements. This is precisely what the state's motion for the subpoena duces tecum asks for. The state argues in its brief that these are necessary as a part of its case against relator on the criminal charge. Respondent ordered production of the records to be turned over to the circuit attorney "for the purpose of inspection, copying and for use in the preparation of trial." The circuit attorney, in his brief for respondent, states "The issuing of the subpoena is for the purpose of discovery".

It is not actually known by respondent or the circuit attorney whether there are any such documents or material in existence. At the hearing before respondent the juvenile officer, who was the only witness who knew anything about the records, testified he had not personally reviewed the file. There was no testimony that the records actually contained a statement by relator. The contents of the records were not shown to anyone at the hearing. What the juvenile officer testified to was what was usually done with a juvenile and what information and summary were usually prepared. The circuit attorney wants to see everything in the file and use whatever he finds which is helpful. This is understandable on his part, but it is nevertheless discovery, pure and simple, just as much as inspecting hospital records for whatever is useful to a defendant in a defense of a damage suit is discovery.

Sup.) 381 S.W.2d 807; State v. Engberg (Mo.Sup.) 377 S.W.2d 282, 286; State v. Simon (Mo.Sup. banc) 375 S.W.2d 102, 104; State v. Kelton (Mo.Sup.) 299 S.W.2d 493, 497; State ex rel. Phelps v. McQueen (Mo.Sup. banc), 296 S.W.2d 85, 89.

There is no contention here that there is in existence a burdensome mass of documents, such as numerous cancelled checks, or invoices, or receipts of the kind to be expected, for example, in a criminal prosecution involving a good deal of paper work, where it would expedite the trial if these could be assembled, sorted out, and marked as exhibits ahead of time. This is an illustration of what I have understood the prior decisions to say rule 25.19 should be used for, because thereby "the trial of the case will be expedited" ("Expedite" means to execute promptly or to hasten; it does not mean to locate or turn up.). The same type of procedure is frequently used to shorten the length of civil trials. The other use of rule 25.19 which the courts have mentioned is to obtain a subpoena to insure that if some person has a *designated* document or object which either the state or the defendant wants to be certain remains subject to the jurisdiction of the court or which will be produced only under compulsion of process, a subpoena duces tecum under rule 25.19 can be served on such person to be sure that he and the particular document or object are on hand for the trial date. The witness and the object are "put under subpoena". But in the present case the court is going much beyond what has heretofore been permitted. And it may well be that discovery in criminal cases should be expanded,[6] but if rule 25.19 is to be used for "fishing expedition" purposes, as is being permitted here, then I think we should plainly say so and overrule those portions of the cases cited in footnote 5 which hold to the contrary.

6. See the interesting article, "Criminal Discovery in Missouri", Rabbitt, St. Louis Bar Journal, Spring 1966, pp. 11–29.